OPINION BY BOWES, J.:
Jerome Hampton appeals from the judgment of sentence imposed following his conviction of driving under the influence of alcohol ("DUI"). We vacate the judgment of sentence, reverse the order denying suppression, and remand for further proceedings.
The trial court set forth the factual and procedural background underlying the instant appeal as follows:
Police Officer Kathleen Byrne,[1 ] of Lower Salford Township, Montgomery County, was on patrol in a marked police vehicle on October 30, 2016, at approximately 3:22 a.m. While stopped on Freed Road at the intersection of Main Street, a vehicle proceeded past her on westbound Main Street. The officer turned westbound onto Main Street and moments later the vehicle's left turn signal activated and the vehicle turned into a field on property belonging to a church. The driver, later identified as [Appellant], stopped the vehicle in the grass in front of the church's office building. Officer Byrne pulled behind the vehicle [without activating the overhead lights or siren on her police cruiser]. [Appellant] turned off the vehicle and he and a female passenger got out. The female passenger approached Officer *455 Byrne and told the officer that she had been giving [Appellant] directions on how to get to her home and he had turned too soon.
Officer Byrne requested identification from [Appellant] and the passenger and had them return to [Appellant's] vehicle. The officer returned to her patrol car and learned that [Appellant's] driver's license had been suspended for driving-under-the-influence-related offenses. [Although not immediately, at some point during the encounter, Officer Byrne turned on her spotlight.]
The officer returned to [Appellant's] vehicle and he admitted to knowing his license had been suspended. During this interaction, Officer Byrne detected an odor of alcohol coming from inside the vehicle and observed that [Appellant's] eyes were glassy. [Appellant] told the officer he had had two shots about two hours before. Based on the results of field sobriety tests and a preliminary breath test that showed the presence of alcohol, Officer Byrne arrested [Appellant] for suspicion of driving under the influence. [Appellant] agreed to a chemical test of his breath, which showed a blood alcohol concentration of .161 percent.
The Commonwealth charged [Appellant] with driving under the influence and related offenses. He filed a motion to suppress, which the [trial] court denied after a hearing [on August 28, 2017. Following the hearing, Appellant] proceeded to a stipulated bench trial, at which he was found guilty of one count of driving under the influence, high rate.... Later that day, [the trial] court sentenced [Appellant] to 1-5 years in prison for the DUI offense[2 ]
[Appellant] filed a timely post-sentence motion, seeking application of the Recidivism Risk Reduction Incentive ("RRRI"). [The trial] court granted the motion. [Appellant] then filed a timely notice of appeal and, after being appointed new counsel and granted an extension of time, complied with [the trial] court's directive to produce a concise statement of errors under [Pa.R.A.P.] 1925(b).
Trial Court Opinion, 12/22/17, at 1-3 (original footnotes and unnecessary capitalization omitted, footnotes added).
Appellant raises the following issues for our review:
I. Whether the police had reasonable suspicion or probable cause which merited following Appellant's vehicle. Whether reasonable suspicion or probable cause existed to justify the search and seizure of the Appellant. Whether all evidence derived from the illegal stop and seizure must therefore be suppressed as fruit of the poisonous tree.
II. Appellant challenges the illegal intrusion on the grounds that Officer Byrne alleges that she thought Appellant's car may have been disabled or the passenger experiencing a medical issue where such a belief was unreasonable under the circumstances and a mere pretext for an illegal stop, detention and seizure or Appellant's person and property. The public safety exception of the [c]ommunity [c]are[taking] [d]octrine[3 ] does not apply.
*456 III. The trial court erred in failing to suppress the results of the breath test and/or in determining that Appellant voluntarily consented to the breath test.
Appellant's brief at 7 (unnecessary capitalization omitted).
The standard of review for the denial of a motion to suppress evidence is as follows:
We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.
Commonwealth v. Livingstone , 174 A.3d 609, 619 (Pa. 2017) (citation omitted). In reviewing questions of law, our standard of review is de novo and our scope of review is plenary. Id. (citation omitted).
In arguing that the trial court erred in denying his motion to suppress, Appellant maintains that, at the moment Officer Byrne pulled behind his stopped vehicle in her marked police vehicle, and blocked his means of egress, he was subjected to an investigative detention or seizure that was not supported by reasonable suspicion or probable cause, nor rendered valid under the public servant exception of the community caretaking doctrine. In its brief, the Commonwealth asserts that the trial court correctly determined that the initial interaction between Officer Byrne and Appellant was a mere encounter until she smelled alcohol, at which time she developed a reasonable suspicion of DUI, thereby warranting an investigative detention.
To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. See Commonwealth v. Reppert , 814 A.2d 1196, 1201 (Pa.Super. 2002) (en banc ). For this purpose, courts in Pennsylvania have defined three types of police interaction: a mere encounter, an investigative detention, and a custodial detention. A mere encounter is characterized by limited police presence, and police conduct and questions that are not suggestive of coercion. Such encounters do not obligate the citizen to stop or respond and, consequently, need not be supported by any level of suspicion. See id. Thus, the hallmark of a mere encounter is that the subject is free to decline to interact with the police or to answer questions, and is also free to leave at any time. See Commonwealth v. DeHart , 745 A.2d 633, 636 (Pa.Super. 2000).
If, however, a police presence becomes too intrusive, the interaction must be deemed an investigative detention or *457 seizure. An investigative detention, by implication, carries an official compulsion to stop and respond. Id. Since this interaction has elements of official compulsion it must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion. Commonwealth v. Strickler , 563 Pa. 47, 757 A.2d 884, 889 (2000). Finally, an arrest or custodial detention must be supported by probable cause to believe the person is engaged in criminal activity. Id.
At issue herein is whether Officer Byrne's interaction with Appellant constituted an investigative detention or seizure. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. See Strickler , supra at 890 ("holding that courts must consider the totality of the circumstances when determining whether a seizure occurred."). A variety of factors may influence this determination, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Livingstone , supra at 621 (quoting United States v. Mendenhall , 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). As our High Court has explained, "subtle factors as the demeanor of the police officer, the location of the confrontation, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements" must be considered. Commonwealth v. Jones , 474 Pa. 364, 378 A.2d 835, 839-40 (1977). An additional factor is whether the police officer physically prevents the citizen from leaving. See Commonwealth v. Greber , 478 Pa. 63, 385 A.2d 1313, 1316 (1978) (plurality) (holding that detaining appellees by blocking their automobile constituted a seizure within the meaning of the Fourth Amendment). Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person would have thought he was being restrained had he been in the defendant's shoes. Reppert , supra , at 1201-02.
As our Supreme Court has observed:
The United States Constitution does not forbid all searches and seizures; rather, it forbids unreasonable searches and seizures. Terry [ v. Ohio ], 392 U.S. [1,] 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 [1968]. A determination of whether a search is reasonable requires balancing the public interest in conducting the search or seizure against an individual's right to be free from arbitrary intrusions by law enforcement officers. Id. at 20-21, 88 S.Ct. 1868. Furthermore, in the context of the Fourth Amendment, a person is considered seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall , 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 ... (1980). In evaluating those circumstances, the crucial inquiry is whether the officer, "by means of physical force or a show of authority," has restrained a citizen's freedom of movement. Id. at 553, 100 S.Ct. 1870 ; Strickler , supra at 890.
Livingstone , supra at 619-20.
Appellant claims that when Officer Byrne pulled in behind his vehicle, she blocked his egress in a manner that made *458 it clear that he was not free to leave, thereby initiating an investigatory detention. Pointing to Officer Byrne's suppression testimony that she observed no vehicle code violations while she was following Appellant, he argues that there was no probable cause or reasonable suspicion to support the vehicle stop.
The trial court concluded that Officer Byrne's "stop was initiated as a mere encounter to determine the status of the vehicle that pulled off into a field of private property at 3:30 a.m. ... [and that d]uring the encounter[,] reasonable suspicion arose [when she smelled alcohol,] warranting an investigative detention" N.T. Suppression, 8/28/17, at 51-52. In so ruling, the trial court credited Officer Byrne's testimony that she suspected that there was car trouble or a medical issue, purportedly invoking the community caretaking doctrine. However, as our Supreme Court explained in Livingstone , "the issue of whether an individual has been seized is distinct from the issue of whether that seizure was reasonable. The fact that a search may be deemed reasonable pursuant to an 'exception' to the warrant requirement does not mean that the individual was not subjected to a seizure in the first instance." Livingstone , supra at 619-20. Importantly, the community caretaking doctrine is an exception to the warrant requirement and is not relevant to the determination of whether police conduct amounted to a seizure in the first instance. Id. at 620. It is only after a seizure has occurred that a court must determine whether the community caretaking doctrine is invoked to validate as reasonable a seizure under state and federal constitutional warrant requirements. Id.
We disagree with the trial court's determination that Officer Byrne's initial interaction with Appellant was a mere encounter. "The pivotal inquiry is whether, in light of the facts and circumstances ..., a reasonable man, innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes." Livingstone , supra at 621 (cleaned up). Based on our review of the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole, we are constrained to conclude, in view of all the circumstances surrounding the incident, that a reasonable person in Appellant's position would not have believed that he was free to leave. At the suppression hearing, Officer Byrne testified that when Appellant drove his vehicle from the roadway into the church field, she "pulled [her marked police vehicle] into the field behind it." N.T. Suppression, 8/28/17, at 17. She further conceded that when she pulled in behind Appellant, she was "[e]ffectively blocking his exit" as his vehicle was facing a building, and he could not travel forward. Id. Indeed, she stated that she "stopped [Appellant] before [she] even knew he was possibly DUI." Id. at 38, 88 S.Ct. 1868 (emphasis added).
We conclude that a reasonable person in Appellant's shoes would not have felt free to leave, and indeed could not leave after Officer Byrne pulled her marked police vehicle behind his vehicle. Mendenhall , supra at 554, 100 S.Ct. 1870. Although Officer Byrne did not activate her emergency lights or siren, she nevertheless restrained Appellant's freedom of movement "by means of physical force" when she blocked his exit. Id. at 553, 100 S.Ct. 1870. Accordingly, Appellant was seized and an investigative detention commenced when Officer Byrne blocked his vehicle. See Greber , supra at 1316 (holding that where police officer pulled his car in a position that blocked the vehicle in question, a seizure occurred); see also *459 Commonwealth v. Gould , 187 A.3d 927, 936 (Pa.Super. 2018) (holding that an investigative detention commenced when parole agent parked his car behind defendant's vehicle, blocking it from moving, identified himself as a parole officer, and asked defendant to exit the vehicle); Commonwealth v. Mulholland , 794 A.2d 398, 402 (Pa.Super. 2002) (holding that investigative detention commenced when officer "parked his cruiser in such a fashion as to make it difficult if not impossible for the van to leave the parking lot").[4]
Having concluded that a seizure occurred, we must next determine whether the Commonwealth demonstrated that there was reasonable suspicion to support it. An investigatory detention is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inferences derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion. Commonwealth v. Hall , 558 Pa. 16, 735 A.2d 654, 659 (1999). The officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." United States v. Sokolow , 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks and citation omitted). Here, Officer Byrne conceded that she observed no vehicle code violations, and that Appellant was not speeding, stayed within the lanes of traffic, appropriately used his turn signal, and properly slowed for the turn into the church field. N.T. Suppression, 8/28/17, at 39. She articulated no facts to support a reasonable suspicion that criminal activity was afoot prior to blocking Appellant's vehicle. Thus, the evidence would clearly support the finding that Officer Byrne's interaction with Appellant was from its inception an investigative detention unsupported by a reasonable, articulable belief that Appellant was engaged in criminal activity. Accordingly, we will proceed to determine whether the seizure was otherwise justified under the public servant exception of the community caretaking doctrine.
Officer Byrne testified that she took obstructive action based on her belief that Appellant's "car was disabled or maybe they were having some type of medical issue going on." N.T. Suppression, 8/28/17, at 18. As noted previously, in order for the public servant exception to apply, Officer Byrne must have been able to point to specific, objective, and articulable facts that would reasonably suggest to an experienced officer that a citizen is in need of assistance. See Livingstone , supra at 636 ("[A] critical component of the community caretaking doctrine is that the police officer's action be based on specific and articulable facts which, viewed objectively and independent of any law enforcement concerns, would suggest to a reasonable officer that assistance is needed").
Appellant maintains that Officer Byrne "failed to indicate how the observable behavior and actions of the individuals in the car would have led her to the conclusion that there was a medical emergency." Appellant's *460 brief at 23. According to Appellant, neither he nor his female passenger signaled for the officer's help or indicated medical distress during the time she was following them. Appellant maintains that his "car was not smoking or puttering[,] nor did it present with any other obvious mechanical malfunctions that would support such a conclusion." Id. at 22-23. Appellant argues that "[s]ince Officer [Byrne] admitted the stop was made before she had a reason to suspect there was criminal activity afoot ... and that she physically blocked his egress and ability to freely leave even though there was no reasonable suspicion or probable cause to do so, and the community caretaking function does not apply, suppression of the evidence is appropriate."[5] Id. at 28-29.
Based on our review of Officer Byrne's suppression testimony, we are unable to find any articulation of specific, objective facts that would reasonably suggest that either Appellant or his female passenger was in need of assistance. The mere fact that Appellant pulled over is wholly insufficient. As the Court in Livingstone observed,
there are many reasons why a driver might pull to the side of a highway: the driver may need to look at a map, answer or make a telephone call, send a text message, pick something up off the floor, clean up a spill, locate something in her purse or in his wallet, retrieve something from the glove compartment, attend to someone in the back seat, or, as in the instant case, enter an address into the vehicle's navigation system. Pulling to the side of the road to perform any of these activities is encouraged, as a momentary distraction while driving may result in catastrophic consequences.
Livingstone , supra at 634-35 (footnote omitted).
Having determined that Officer Byrne effectuated an investigatory detention upon pulling behind Appellant's vehicle, and that such detention was not supported by a reasonable suspicion that criminal activity was afoot nor excused from constitutional warrant requirements by the public servant exception of the community caretaking doctrine, we conclude that the trial court erred in denying Appellant's motion to suppress all evidence obtained as a result of the unsupported investigatory detention, including the results of the field sobriety tests, preliminary breath test, and the chemical test of his breath which showed a blood alcohol concentration of .161 percent. Accordingly, we vacate the judgment of sentence, reverse the suppression order, and remand for further proceedings consistent with this opinion.[6]
Judgment of sentence vacated. Order denying suppression reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

In her affidavit of probable cause, Officer Byrne identified her last name as "Gahagan." However, when she testified at the suppression hearing, she identified herself as "Kathleen Byrne." Because the trial court refers to her throughout as Officer Byrne, we will do so herein for the sake of consistency.

The trial court also determined that Appellant was in violation of his probation imposed in another case. The trial court imposed a consecutive sentence of six to twelve months in prison and five years of probation for the probation violation.

The community caretaking doctrine has been characterized as encompassing three specific exceptions to the state and federal constitutional requirements that police obtain a warrant prior to conducting an unreasonable search or seizure: the emergency aid exception; the automobile impoundment/inventory exception; and the public servant exception, also sometimes referred to as the public safety exception. Commonwealth v. Livingstone , 174 A.3d 609, 626 (Pa. 2017). Each of the exceptions contemplates that the police officer's actions be motivated by a desire to render aid or assistance, rather than the investigation of criminal activity. Id. at 627. Consequently, "in order for the public servant exception of the community caretaking doctrine to apply, police officers must be able to point to specific, objective, and articulable facts that would reasonably suggest to an experienced officer that a citizen is in need of assistance." Id. at 634.

Cf. Commonwealth v. Au , 615 Pa. 330, 42 A.3d 1002, 1008 (2012) (concluding no investigative detention occurred where officer approached vehicle parked in lot, but did not activate overhead lights, position his vehicle so as to block suspect vehicle from leaving, or otherwise issue threats or commands or show force); Commonwealth v. Baldwin , 147 A.3d 1200, 1204 (Pa.Super. 2016) (finding no investigative detention where officers' vehicle did not block pedestrian's path out of parking lot); Commonwealth v. Collins , 950 A.2d 1041, 1044, 1047 (Pa.Super. 2008) (en banc ) (finding no investigative detention where police parked 20 feet behind vehicle parked along highway, did not block vehicle from leaving, and did not activate overhead lights).

Appellant also claims that the Commonwealth waived application of the community caretaking doctrine when the prosecutor argued in his summation that the interaction was a mere encounter until Officer Byrne smelled alcohol, at which time it became a seizure. Appellant's brief at 26. We decline to find waiver, as the trial court factored into its analysis Officer Byrne's testimony that she thought that Appellant's car may have been disabled or that there was a medical issue.

As we conclude that relief is due based on Appellant's first two issues, we need not address his third issue.