J-A23042-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| v. | : | |
| ANDREW LYNN SULLIVAN, | : | |
| Appellant | : | No. 256 WDA 2019 |

Appeal from the Order Entered July 13, 2018
in the Court of Common Pleas of Somerset County
Criminal Division at No(s): CP-56-CR-0000114-2018

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED DECEMBER 05, 2019

Andrew Sullivan ("Sullivan") appeals from the judgment of sentence imposed following his convictions of two counts of driving under the influence ("DUI"), and one count each of restrictions on alcoholic beverages and resisting arrest.[1] We affirm.

On November 5, 2017, Pennsylvania State Trooper Jeremy Lischak ("Trooper Lischak") and Department of Conservation and Natural Resources ("DCNR") Officers Joshua McVay ("Officer McVay") and Shane Stinedurf ("Officer Stinedurf") (collectively, "the officers") were on patrol, parked on Olde Road at its intersection with Route 31, in Somerset County, Pennsylvania.

_____

[1] See 75 Pa.C.S.A. §§ 3802(a)(1), 3802(c), 3809(a); 18 Pa.C.S.A. § 5104.

Each officer was in uniform and driving a separate marked law enforcement vehicle.[2]

At around 9:30 p.m., Sullivan approached the officers in his vehicle on State Route 31, drove onto the driveway of a house located near where the officers were positioned, and proceeded into a grassy area next to the driveway. Sullivan's vehicle stopped in the grassy area, facing the officers, at a distance of approximately 20 yards, with its headlights on. Sullivan left the vehicle's engine running, and flashed its high-beams at the officers.

Officer McVay approached Sullivan's vehicle on foot to inquire as to Sullivan's intentions. When Officer McVay was approximately 10 yards away from the vehicle, Sullivan yelled out his vehicle's window for the officers to "get the fuck off of his property." Officer McVay continued walking towards Sullivan's vehicle, and advised Sullivan that the officers were not on his property, and that they were parked on a public road. Sullivan told Officer McVay that he did not care, and he wanted them to get off of his property. When Officer McVay reached Sullivan's driver-side window, he observed two cans of beer in Sullivan's center console, one open and approximately half-full, and one closed. Officer McVay also noticed a strong odor of alcohol emitting from Sullivan. Officer McVay asked Sullivan to turn off his vehicle's

_____

[2] Trooper Lischak was operating a Pennsylvania State Police vehicle. Officers McVay and Stinedurf were operating DCNR vehicles. All three vehicles featured light-reflective markings.

engine and hand him the beer cans, after which he requested Officer Stinedurf and Trooper Lischak to assist him. Officer McVay then asked Sullivan to step out of his vehicle, and Sullivan complied.

When Trooper Lischak arrived at Sullivan's vehicle, he noticed that Sullivan was emitting an odor of alcohol and had slurred speech. Trooper Lischak advised Sullivan that he was under investigation for DUI, and requested that he submit to a field sobriety test. Sullivan refused, and told the officers that he was on his own property. Trooper Lischak then advised Sullivan that he was under arrest for DUI, and attempted to handcuff him. Sullivan resisted by pulling his arms away from Trooper Lischak's grasp. Trooper Lischak was unable to handcuff Sullivan until Officers McVay and Stinedurf assisted in restraining Sullivan. Once handcuffed, Sullivan was transported to a hospital for a blood draw.[3] Sullivan was arrested and charged with the above-mentioned offenses.

Sullivan filed an Omnibus Pre-Trial Motion to suppress, challenging the officers' contact with Sullivan as an illegal search and seizure, which the trial court denied. Sullivan filed a Motion for Reconsideration, which the trial court denied. At the conclusion of trial, Sullivan made a Motion for Judgment of Acquittal on the resisting arrest charge and the two DUI charges, which the trial court denied. Following trial, the jury found Sullivan guilty of DUI –

_____

[3] The blood test result showed that Sullivan had a blood alcohol content of .31%.

general impairment, DUI – highest rate of alcohol, and resisting arrest; the trial court found Sullivan guilty of restriction on alcoholic beverages. The trial court sentenced Sullivan to an aggregate term of one to five years in prison. Sullivan filed a timely Notice of Appeal and a Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

On appeal, Sullivan raises the following questions for our review:

Whether the present matter should be reversed and remanded because the [trial court] erred in:

a. Failing to suppress evidence seized by officers after entering [Sullivan's] private property[?];

b. Failing to permit [Sullivan] to establish facts regarding the [o]fficers' illegal entry onto [Sullivan's] private property[,] after explicitly being instructed to exit the premises[?];

c. Denying [Sullivan's] Motion for Judgment of Acquittal on his conviction of resisting arrest[?]

d. Finding sufficient evidence to convict [Sullivan] of resisting arrest[?]; and

e. Finding sufficient evidence to convict [Sullivan] of restriction on alcoholic beverages[?]

Brief for Appellant at 7.[4]

In his first claim, Sullivan alleges that the trial court erred in denying his Omnibus Pretrial Motion to suppress. Id. at 14-26. Sullivan argues that

_____

[4] The Argument section of Sullivan's brief combines his third and fourth claims together under Roman numeral "III". Accordingly, we will refer to them jointly as his "third claim." We will refer to his final claim, regarding the sufficiency of evidence on his restriction on alcoholic beverages charge, as his "fourth claim."

the officers violated his rights against unreasonable searches and seizures, set forth in the Fourth Amendment of the U.S. Constitution, and Article 1, Section 8 of the Pennsylvania Constitution. Id. at 14-18. According to Sullivan, the officers conducted a search on his property, and seized him, without a warrant, probable cause, or reasonable suspicion that a crime had taken place. Id. at 18-26. Sullivan claims that the officers conducted an unlawful search when they entered his property, and an unlawful seizure when they reached his vehicle. Id.

> The standard of review for the denial of a motion to suppress evidence is as follows: We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

Commonwealth v. Hampton, 204 A.3d 452, 456 (Pa. Super. 2019).

> [I]t is hornbook law that the Fourth Amendment to the United States Constitution[,] as well as Article I, § 8 of the Pennsylvania Constitution[,] protect citizens from unreasonable searches and seizures. Warrantless searches and seizures … are unreasonable per se, unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 357 … (1967).

Commonwealth v. Simmons, 17 A.3d 399, 402 (Pa. Super. 2011) (some citations and quotation marks omitted; paragraph break and brackets omitted).

We will first determine whether Sullivan was subjected to an unlawful search when the officers entered his property.

> It is well established that absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1, Section 8 of the Pennsylvania Constitution. Our courts have extended this constitutional protection to the curtilage of a person's home by analyzing factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept.

Commonwealth v. Simmen, 58 A.3d 811, 815 (Pa. Super. 2012) (citations, quotation marks and brackets omitted).

In Simmen, police were called to the scene of a hit-and-run motor vehicle accident. See Simmen, 58 A.3d at 813. Officer Christian Guzzo ("Officer Guzzo") responded to the scene, and observed a vehicle's bumper laying on the ground, a series of tire tracks, and a trail of vehicle fluid leaving the scene of the accident. Id. Officer Guzzo followed the trail of fluid to a home approximately 1.5 to 2 miles away, which had a vehicle sitting in the driveway that matched the hit-and-run vehicle's description. Id. With the hopes of contacting the homeowner, Officer Guzzo approached the home's front door, when he noticed that the vehicle was missing a bumper, which matched the bumper found at the scene, the vehicle was leaking fluid, and the vehicle's driver-side airbag had been deployed. Id. Officer Guzzo was standing on the home's driveway when he made these observations. Officer

Guzzo subsequently made contact with the driver of the vehicle, Richard Simmen, and determined that he had been driving under the influence. Id. at 813-14.

Prior to a non-jury trial, Simmen filed a motion to suppress the evidence discovered by Officer Guzzo when he walked onto Simmen's driveway. Id. at 814. The trial court denied the motion. Id. On appeal, this Court found that the trial court's holding was supported by the evidence. Id. at 815. We reasoned that the driveway was not curtilage in which Simmen had a reasonable expectation of privacy, based on a number of factors:

> Based on the description of the driveway, and the location of the car on it, there was no evidence presented at the time of the suppression hearing to support an assertion that there was any expectation of privacy in the area. The driveway was in the front of the house, leading from the street to the garage contained within the actual residence. The car was parked in plain view of the street on the driveway, within twenty (20) feet of the road. There was no evidence of signs warning against trespass on the driveway or that the driveway was gated or fenced or shielded from the view of the street in any way. In fact, it appears from the description of the house that access to the front door of the residence was made via the driveway. These facts certainly suggest that there could be no reasonable expectation of privacy in the area of the driveway.

Id. at 815-16.

Similarly, in the case sub judice, the record reflects that the grassy area on which Sullivan stopped his car (1) bordered and was within plain view of Pennsylvania Route 31 and two cross roads, (2) contained no signs prohibiting trespassing, (3) was not enclosed with a fence or other structure, and (4) was used by Sullivan to park his vehicle. See N.T., 10/2/18, at 14-15, 20-21.

Therefore, there was no evidence to support an assertion that there was a reasonable expectation of privacy in that area. See Simmen, supra; cf. Commonwealth v. Gibbs, 981 A.2d 274, 280 (Pa. Super. 2009) (holding that the front porch of a defendant's home is not protected as curtilage where "there was no front yard or other enclosed space preceding or surrounding the porch; rather, the porch "butt[ed] up" against the sidewalk[; t]here was no gate blocking entry to the porch and nothing else which would indicate that the porch was closed to members of the general public[; and f]urther, the porch was an empty, unenclosed, concrete slab that was used by deliverymen and visitors to the apartment."); see also Commonwealth v. Lemanski, 529 A.2d 1085, 1091 (Pa. Super. 1987) (stating that "[i]t is now well established that a person cannot have a reasonable or justifiable expectation of privacy in things or activities which are generally visible from some public vantage point."). Accordingly, Sullivan was not subjected to an unlawful search.

We will next determine whether Sullivan was subjected to an unlawful seizure.

> To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. For this purpose, courts in Pennsylvania have defined three types of police interaction: a mere encounter, an investigative detention, and a custodial detention. A mere encounter is characterized by limited police presence, and police conduct and questions that are not suggestive of coercion. Such encounters do not obligate the

citizen to stop or respond and, consequently, need not be supported by any level of suspicion. Thus, the hallmark of a mere encounter is that the subject is free to decline to interact with the police or to answer questions, and is also free to leave at any time.

If, however, a police presence becomes too intrusive, the interaction must be deemed an investigative detention or seizure. An investigative detention, by implication, carries an official compulsion to stop and respond. Since this interaction has elements of official compulsion it must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion. Finally, an arrest or custodial detention must be supported by probable cause to believe the person is engaged in criminal activity. …

To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. A variety of factors may influence this determination, including the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. As our High Court has explained, subtle factors as the demeanor of the police officer, the location of the confrontation, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements must be considered. An additional factor is whether the police officer physically prevents the citizen from leaving. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person would have thought he was being restrained had he been in the defendant's shoes.

Commonwealth v. Hampton, 204 A.3d 452, 456–57 (Pa. Super. 2019)

(citations and quotation marks omitted).

In Hampton, police officer Kathleen Byrne ("Officer Byrne") was on patrol in a marked police vehicle, when a vehicle operated by the defendant,

Jerome Hampton, passed in front of Officer Byrne. Id. at 454. Officer Byrne followed Hampton, without activating her overhead lights or siren. Id. Moments later, Hampton activated his turn signal, turned into a grassy area on private property belonging to a church, and stopped his vehicle. Id. Officer Byrne followed Hampton into the grassy area, and stopped her vehicle behind Hampton, without activating her overhead lights or siren. Id. Hampton and his female passenger exited Hampton's vehicle, and the female passenger approached Officer Byrne. Id. at 454-55. After requesting identification from Hampton and the passenger, Officer Byrne learned that Hampton's driver's license had been suspended for DUI-related offenses. Id. at 455. At some point, Officer Byrne activated her spotlight, and focused it on Hampton's vehicle. Id. Following a brief discussion with Hampton, Officer Byrne witnessed signs that Hampton was intoxicated, conducted a breath test, and arrested Hampton for suspicion of driving under the influence. Id.

Following the denial of a pre-trial suppression motion, and a non-jury trial, Hampton was found guilty of DUI. Id. On appeal, Hampton argued that Officer Byrne's interaction with Hampton was an investigative detention, and not a mere encounter. Id. at 457. The Hampton Court agreed. Id. at 458. The Court stated that "[t]he pivotal inquiry is whether, in light of the facts and circumstances, a reasonable man, innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes." Id. The Court highlighted the facts that Officer Byrne followed Hampton in her marked

police vehicle, and parked her vehicle in such a way as to block Hampton's vehicle from leaving. Id.

Here, Sullivan caused the officers to investigate his actions by approaching the officers in his vehicle with his lights on them, flashing his vehicle's high-beams, and then shouting at them to "get the fuck off his property." N.T., 7/13/18, at 14-16. Sullivan engaged the officers; the officers did not pursue and stop Sullivan. Id. Additionally, Officer McVay approached Sullivan's vehicle on foot, and did not activate his vehicle's lights, sirens or spotlight before approaching Sullivan. Id. at 15. When Officer McVay approached Sullivan's vehicle, Officer McVay did not request that Sullivan provide him with identification, or that Sullivan take any other action, prior to observing the open beer container. Id. at 16-18. Sullivan's vehicle was not blocked, and he was capable of leaving the area. Id. at 14-18. Given the totality of the circumstances, we find that the officers' interaction with Sullivan was a mere encounter, and did not require reasonable suspicion. See Hampton, supra; compare Hampton, supra, with Commonwealth v. Adams, 205 A.3d 1195, 1200 (Pa. 2019) (stating that the defendant was "seized" when the officer prevented the defendant from exiting his vehicle, by closing the defendant's driver-side door after the defendant had opened it). Accordingly, the trial court did not err in denying Sullivan's Omnibus Pretrial Motion to suppress.

In his second claim, Sullivan alleges that the trial court erred by preventing him from presenting testimony regarding the officers' actions of entering his property without permission. See Brief for Appellant at 26-30. Sullivan claims that he intended to demonstrate that the officers were trespassing on his property when they noticed the odor of alcohol and open beer container. Id. Sullivan argues that he was prevented from establishing the defense of an illegal arrest based on the officers' initial trespass. Id. at 29-30.

The record reflects the following discussion at trial regarding Sullivan's claim:

> [Defense counsel to Officer McVay]: You're aware, however, that if you're told to get off property and you refuse to do so, it is a violation of the Crimes Code of the Commonwealth of Pennsylvania; right?
>
> THE COURT: Counsel approach.
>
> (SIDEBAR.)
>
> THE COURT: You're categorically wrong. Now, that question is wrong. That is a misstatement of the law. Do you want to withdraw it, or do you want me to grant - -
>
> [Defense counsel]: No, I'll withdraw or correct it, but if you are advised of the - - by the owner of the property not to stay or you had no right or privilege to be there - - maybe I didn't state it correctly.
>
> THE COURT: Well, in the process of investigating an officer safety issue. Okay. It's that simple.
>
> [Defense counsel]: Okay. Understood.
>
> THE COURT: You either withdraw - -

[Commonwealth]: Okay. Now, we need to know what you intend to do because if you're going to - - going to withdraw the question - -

[Defense counsel]: I'm going to withdraw the question.

(SIDEBAR CONCLUDED)

[Defense counsel]: So, strike that question, please.

N.T., 10/22/18, at 109. Sullivan's counsel then moved on to a different line of questioning, without attempting to re-phrase his question regarding the alleged trespass.

Instead of disagreeing with the court, Sullivan's counsel surmised that "maybe I didn't state [the law] correctly" and opted to withdraw his question. Therefore, the trial court did not prevent him from pursuing this line of questioning, and Sullivan has not preserved this claim for appeal. See Commonwealth v. Tighe, 184 A.3d 560, 582 (Pa. Super. 2018) (holding that appellant waived any right to appeal a trial court's ruling on appellant's question at trial, where the appellant withdrew the question instead of disagreeing with the court's ruling); see also Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, this claim is waived.

In his third claim, Sullivan alleges that the trial court erred in denying his Motion for Judgment of Acquittal on the resisting arrest charge. See Brief for Appellant at 30-36. Sullivan claims that the Commonwealth failed to present sufficient evidence to prove that he resisted arrest. Id. Sullivan argues that the arrest was not lawful because (1) the officers collected the

evidence against him while trespassing; (2) he did not intend to prevent his arrest, because he was simply trying to close his can of chewing tobacco; and (3) his action of pulling his wrist away from the officers cannot be considered "means justifying or requiring substantial force." Id. at 31-36.

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." Commonwealth v. Emanuel, 86 A.3d 892, 894 (Pa. Super. 2014). We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, or part or none of the evidence.

Commonwealth v. Melvin, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

A person is guilty of resisting arrest if, "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104.

Trooper Lischak testified that he advised Sullivan that he was under arrest before attempting to handcuff him. N.T., 10/22/18, at 33. When Trooper Lischak grabbed Sullivan's right hand to place him in handcuffs, Sullivan turned his body and pulled his hand from Trooper Lischak's grip. Id. at 33, 94. Trooper Lischak pushed Sullivan up against Sullivan's vehicle, in an attempt to subdue him, and advised that he would use his taser if Sullivan did not comply. Id. at 33-34. Sullivan continued to struggle, forcing Officers McVay and Stinedurf to assist in restraining Sullivan. Id. at 33-34, 95-96. With the assistance of Officers McVay and Stinedurf, Trooper Lischak was able to secure Sullivan's arms, and attach the handcuffs to Sullivan's wrists. Id. Therefore, the evidence is sufficient to establish that Sullivan employed means requiring substantial force to overcome resistance, with the intent of preventing Trooper Lischak from placing him under arrest. See Commonwealth v. Miller, 475 A.2d 145, 146-47 (Pa. Super. 1984) (finding sufficient evidence to convict the defendant of resisting arrest where the defendant "strain[ed]" his arms against police officers' attempts to handcuff

the defendant, and it took two officers to subdue and handcuff defendant). Accordingly, Sullivan's third claim fails.

In his fourth claim, Sullivan alleges that there was insufficient evidence to convict him of restrictions on alcoholic beverages. See Brief for Appellant at 36-38. Sullivan argues that the Commonwealth failed to prove that the beer cans procured from his vehicle were open at the time that he was operating his vehicle on Pennsylvania State Route 31. Id. at 37-38.

Section 3809(a) of the Vehicle Code, in relevant part, states, "an individual who is an operator … in a motor vehicle may not be in possession of an open alcoholic beverage container or consume … an alcoholic beverage in a motor vehicle while the motor vehicle is located on a highway in this Commonwealth." 75 Pa.C.S.A. § 3809(a). Therefore, the Commonwealth was required to prove that Sullivan (1) operated a vehicle, (2) on a Pennsylvania highway, (3) while in possession of, or consuming, an open alcoholic beverage. See id.

The evidence, viewed in a light most favorable to the Commonwealth, establishes that Officer McVay witnessed Sullivan's vehicle travel down State Route 31. N.T., 10/22/18, at 85. Seconds later, Officer McVay approached Sullivan's vehicle and observed, in the center console, one open, half-empty beer can, with perspiration on the outside of the can, and one unopened beer can. Id. at 87-90. Officer McVay was subsequently handed the two beer cans by Sullivan, and later discovered a third, empty, beer can behind the front

passenger seat. Id. at 92, 97. Therefore, the evidence is sufficient to establish that Sullivan operated his vehicle on a Pennsylvania highway while in possession of an open alcoholic beverage. See Melvin, 103 A.3d at 39-40 (stating that "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.").

Judgment of sentence affirmed.

P.J.E. Bender joins the memorandum.

Judge Kunselman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2019