J-S17007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| DERRICK CHATMAN | : | |
| Appellant | : | No. 2768 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 21, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002971-2022

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED JULY 22, 2024**

Derrick Chatman appeals from the judgment of sentence of three to ten years of incarceration imposed upon his conviction for possession with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia. We affirm.

We glean the following facts from the certified record. At approximately 10:00 p.m. on July 24, 2020, Sergeant Raymond Fanelli of the Falls Township Police Department was driving an unmarked police vehicle on Lincoln Highway in Falls Township, Bucks County when he observed a pick-up truck stopped on the shoulder of the road, on the "blind side" of a hill near a major intersection. *See* N.T. Suppression Hearing, 2/6/23, at 9. Sergeant Fanelli drove by the vehicle three times and witnessed Appellant, as well as a woman later identified as Bobbie Sherman, both wearing dark clothing, running into the highway, and waving other motorists around them as they retrieved items

from the road. On the third pass, Sergeant Fanelli radioed for assistance from marked units. In his request, he told the officers that there may have been a traffic accident. He also believed he had witnessed a violation of various traffic laws requiring pedestrians to yield the right-of-way to oncoming traffic in a roadway.[1]

A few minutes later, officers Ryan Murphy and Michael Parnes arrived on the scene, parked behind Appellant's vehicle, and activated the emergency lights. Sergeant Fanelli and the officers approached the vehicle, where both Appellant and Ms. Sherman had returned. Appellant was seated in the driver's seat and Ms. Sherman in the passenger's seat. As he walked towards the vehicle, Officer Murphy observed wood debris and "a number of metal spoons, small metal spoons" in the roadway. *See* N.T. Suppression Hearing, 2/6/23, at 56. The officers requested Appellant's driver's license, which he provided, and inquired as to the events that occurred at the scene. Appellant denied having been in an accident and instead reported that less than five minutes before the officers arrived on the scene, a box was thrown at his truck from another vehicle and was then struck by oncoming traffic. This, however, was inconsistent with the observations of Sergeant Fanelli, who had witnessed Appellant and Ms. Sherman retrieving items from the road for more than

_____

[1] Sergeant Fanelli stated that he had witnessed, among others, the following Pennsylvania Vehicle Code violation: "Every pedestrian crossing a roadway at any point other than within a crosswalk at an intersection or any marked crosswalk shall yield the right-of-way to all vehicles upon the roadway." 75 Pa.C.S. § 3543(a).

fifteen minutes. Appellant and Ms. Sherman were also speaking over each other during this encounter.

Officer Parnes and Officer Murphy directed Appellant to step out of the vehicle. As he exited, Officer Murphy observed two plastic containers in plain view in the bottom compartment of the door: one contained a pill that he recognized from his extensive narcotics training and police experience as Ecstasy, and the other contained a small tab of tinfoil, which he knew often stored LSD. The officers simultaneously requested that Ms. Sherman exit the vehicle and, as she did, Sergeant Fanelli observed a broken lockbox and a clear container in the passenger's footwell. The container held a white crystalline substance that the sergeant recognized from his training and experience as methamphetamine. The box itself was consistent in material and design with the wood debris found on the highway. As a result, the officers placed Appellant and Ms. Sherman under arrest.

Appellant's vehicle was secured and transported for a later inventory search, where police recovered various forms of methamphetamine, LSD, Oxycodone, nitroglycerin, MDMA, Gabapentin, amphetamines, Delta-9-THC, and assorted drug paraphernalia. Subsequently, Sergeant Fanelli questioned both Appellant and Ms. Sherman. During her interview, Ms. Sherman admitted that the box containing methamphetamine had fallen from Appellant's vehicle and as it fell, Appellant exclaimed "words to the effect of, my shit just fell off." N.T. Suppression, 2/6/23, at 22.

Based on the foregoing, the Commonwealth charged Appellant with possession with intent to deliver, conspiracy to commit possession with intent to deliver, possession of a controlled substance, possession of drug paraphernalia, and driving with a suspended license. Appellant filed a motion to suppress the evidence obtained from his vehicle during the initial encounter with police and the subsequent inventory search. A suppression hearing was held on February 6, 2023, wherein each of the three officers attested to the aforementioned events. The court denied the motion on the same day. Appellant proceeded to a jury trial on August 2, 2023, and was convicted of possession with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia. Subsequently, Appellant was sentenced as indicated hereinabove.

This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement, and the trial court issued a responsive Rule 1925(a) opinion. Appellant raises the following three issues on appeal:

A. Did the trial court err in denying Appellant's motion to suppress because the initial stop and detention of Appellant was not supported by reasonable suspicion or probable cause?

B. Did the trial court err in denying the motion to suppress because the detention of Appellant was not supported by reasonable suspicion?

C. Did the trial court err in denying the motion to suppress because the continued detention of Appellant was not supported by reasonable suspicion?

Appellant's brief at 4 (cleaned up).

All of Appellant's arguments assert that the trial court erred in denying Appellant's motion to suppress evidence. Our standard of review in this context is well-established:

> An appellate court's standard of reviewing the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Thus, our review of questions of law is *de novo*. Our scope of review is to consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole.

*Commonwealth v. Shaffer*, 209 A.3d 957, 968-69 (Pa. 2019) (citations omitted).

In his brief, Appellant does not contest the trial court's factual findings. Rather, in arguing that the trial court erred in denying his motion to suppress, he maintains that the officers subjected him to a seizure that was not supported by either reasonable suspicion or probable cause. *See* Appellant's brief at 10.

The Fourth Amendment of the United States Constitution guarantees individuals the freedom from unreasonable searches and seizures. *See Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa.Super. 2019). To secure this right, "courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Commonwealth v. Hampton*, 204 A.3d 452, 456 (Pa.Super. 2019) (citation

omitted). For this purpose, the Pennsylvania courts have organized these interactions into three categories: mere encounters, investigative detentions, and custodial detentions. *Id*.

Preliminarily, we note that the police seized Appellant when they parked their police vehicle behind him and activated the emergency lights. *See Commonwealth v. Livingstone*, 174 A.3d 609, 625 (Pa. 2017) (holding that when a police vehicle pulls behind or alongside an individual's vehicle and activates the emergency lights, a reasonable person would not feel free to leave, and therefore, the interaction amounts to a seizure). Further, this was an investigative detention, since it did not rise to the level of an arrest. *See Commonwealth v. Sloan*, 303 A.3d 155, 167 (Pa.Super. 2023) (explaining that a seizure qualifies as an investigative detention when it subjects an individual to a period of detention but does not "become so coercive as to constitute the functional equivalent of arrest").

An investigative detention has "elements of official compulsion, [and therefore,] it must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity[.]" *Hampton*, 204 A.3d at 457. To meet this standard, the detaining officer must identify "specific and articulable facts which, in conjunction with rational inferences derived from those facts," provide reasonable suspicion that criminal activity is afoot. *Id*. at 459. A court must consider "the totality of the circumstances" to determine whether the officer possessed reasonable suspicion. *See Commonwealth v. Cauley*, 10 A.3d 321, 326 (Pa.Super. 2010).

Generally, this reasonable suspicion requirement applies to traffic stops as well. ***See Commonwealth v. Ruffin***, 282 A.3d 796, 800 (Pa.Super. 2022) (concluding that a traffic stop constitutes a seizure within the meaning of the Fourth Amendment). A traffic stop amounts to an investigative detention, and thus, must be supported by "sufficient facts to provide an officer with reasonable suspicion to believe that the vehicle or driver was in violation of a provision of the Vehicle Code." ***Id***. However, where the violation requires no additional investigation, such as a speed limit infraction, the officer must possess probable cause of the violation to initiate the traffic stop. ***Id***. Probable cause exists when the facts and circumstances within the knowledge of the officer at the time of the detention "are sufficient in themselves to warrant a man of reasonable caution in the belief" that the suspect has committed or is committing a crime. ***See Commonwealth v. Hoppert***, 39 A.3d 358, 362 (Pa.Super. 2012).

In denying Appellant's motion to suppress, the trial court deduced, *inter alia*, that the officers possessed both reasonable suspicion and probable cause to support the validity of the traffic stop. ***See*** Trial Court Opinion, 1/11/24, at 12, 14. Specifically, it stated the following:

> Here, [Sergeant] Fanelli observed, on no less than three separate occasions, Appellant and his passenger exit their vehicle and enter the southbound traffic lane to pick up objects from the road. Further, they were doing so at night and on the backside of a blind hill on a busy road. Indeed, they had to actively wave traffic around them to avoid being hit.

*Id*. at 13 (citations omitted). Accordingly, the court found that the circumstances supported a lawful traffic stop, and by implication, that a man of reasonable caution would believe a Vehicle Code violation concerning failure to yield to traffic had occurred. *Id*. Thus, the court noted that the officers' order to alight from the vehicle was also appropriate as part of a valid traffic stop. *Id*. at 14.

In response, Appellant argues that his interaction with the officers was not supported by either probable cause or reasonable suspicion. *See* Appellant's brief at 10. He contends that the officers did not possess probable cause to order Appellant out of the vehicle because, even if Appellant violated the Vehicle Code by failing to yield to traffic, the command served no purpose relevant to the suspected violation. *Id*. at 31. Additionally, Appellant maintains that the officers did not possess reasonable suspicion of a crime because both Sergeant Fanelli and Officer Parnes testified that they had not seen any evidence of criminal activity prior to asking Appellant to exit the vehicle. *Id*. at 29-30. Furthermore, Officer Murphy's observation of metal spoons in the road did not identify criminal activity because spoons are legal eating utensils. *Id*. at 21. As such, Appellant claims that it was unlawful for the officers to require Appellant to step out of the vehicle.

On review, we find that the trial court did not err in denying Appellant's motion to suppress. Given that the Vehicle Code violation of failing to yield to traffic did not require any additional investigation, probable cause was required to justify the stop. The officers possessed probable cause, as the

evidence presented at the hearing supported the determination that a reasonable person would have believed that a traffic violation occurred. Sergeant Fanelli testified that he had seen Appellant and Ms. Sherman running into the roadway as cars were approaching to retrieve items and waving other motorists around them in the process. *See* N.T. Suppression, 2/6/23, at 12. Consequently, he asserted that he believed this was a violation of the applicable traffic law. *Id*. at 45.

Based on this testimony, the officers possessed probable cause to initiate a traffic stop. Further, in any valid traffic stop, law enforcement officers have an absolute right to order the occupants of the vehicle to exit the vehicle for the duration of the traffic stop to assure the officers' safety. *See Commonwealth v. Boyd*, 17 A.3d 1274, 1277 (Pa.Super. 2011). Since the officers' interaction with Appellant constituted a valid traffic stop, they were entitled to require him to exit the vehicle. For this reason, we agree with the trial court that the police did not subject Appellant to an unreasonable seizure.[2]

Accordingly, the trial court did not err in denying Appellant's motion to suppress, and we therefore have no cause to disturb his convictions.

Judgment of sentence affirmed.

---

[2] Given that the seizure of Appellant was lawful, when the officers observed drugs and drug paraphernalia in plain view as Appellant and Ms. Sherman opened their doors, they developed probable cause to search the vehicle.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/22/2024