J-A06019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER JOHNSON | : | |
| | : | |
| Appellant | : | No. 343 EDA 2018 |

Appeal from the Judgment of Sentence December 20, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008525-2016

BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                     **FILED APRIL 06, 2020**

Appellant, Christopher Johnson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for resisting arrest, possession of a firearm prohibited, firearms not to be carried without a license, and carrying firearms in public in Philadelphia.[1]  We affirm.

In its opinion, the trial court sets forth the relevant facts of this case, in part, as follows:

> On August 16, 2016, between 10:40 a.m. and 10:45 a.m., Philadelphia Police Officer Joseph Rauchut and his partner, Officer [Paul] Sanchez, received a radio call directing them to the 1200 block of Lycoming Street for a person with a gun.  The call described the suspect as a Hispanic male

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 5104, 6105(a)(1), 6106(a)(1), and 6108, respectively.

wearing a green tee shirt, blue jeans, and possibly high on narcotics. Officer Rauchut testified that the location is in the 25th police district which is known to be a high-crime area with high drug activity and extreme violence. While responding to the call at Lycoming Street and Old York Road, Officer Rauchut spoke with another officer who advised that a civilian reported the suspect to be traveling northbound on Old York Road.

After surveying the surrounding area for approximately four minutes, Officer Rauchut observed…Appellant in the middle of the highway on the 1300 block of Lycoming Street. Officer Rauchut testified that…Appellant was standing outside of a parked car and was yelling at a man who was sitting inside the parked car. Appellant was sweating profusely and had "veins popping out of his neck." The man in the car appeared "confused." …Appellant was wearing a navy-blue shirt, blue jeans, and a sweatshirt wrapped around his waist. The officers then turned down Lycoming Street in a marked patrol car. As the officers approached, the patrol car's sirens and lights were off.

(Trial Court Opinion, filed May 30, 2019, at 3) (internal citations to record omitted). The officer's observations of Appellant, training, and four years' experience as a police officer entirely in the 25th police district, convinced Officer Rauchut that Appellant was under the influence of phencyclidine ("PCP") or synthetic marijuana ("K2").

The officers exited the patrol vehicle, without guns drawn. Officer Rauchut said to Appellant, "Hey, what's going on, man? You want to come over to my car?" Appellant complied and approached the car. As Appellant walked toward the car, Officer Rauchut noticed a bulge at Appellant's waistband, where a sweatshirt was wrapped around his waist. Based upon his training and experience, Officer Rauchut believed the bulge in Appellant's

- 2 -

waistband was a gun.

The trial court opinion continues:

> … Officer Rauchut asked…Appellant to place his hands on the vehicle in order to conduct a protective search. Despite repeated requests, …Appellant refused to place his hands on the car and instead repeatedly held them about a foot above the front of the officers' patrol car. Officer Rauchut then grabbed…Appellant's arm to place it behind his back wherein…Appellant reached into his waistband and grabbed a gun.

(**Id.** at 4) (internal citations to record omitted). Officer Rauchut attempted to pry the gun from Appellant's hand and simultaneously apprehend Appellant. Appellant physically resisted Officer Rauchut's grasp for approximately 45 seconds. Meanwhile, Appellant repeatedly screamed at the officers that he did not want to go back to jail. Appellant threatened the officers, saying, "Get my hands off the gun, see what happens." When the officers instructed him to stop resisting, Appellant responded, "You're going to have to kill me." Eventually, Officer Rauchut placed Appellant in a bear hug and isolated the hand in which Appellant held the gun, allowing Officer Sanchez to take the gun from Appellant. A third officer, Officer John Durando, approached to assist. Based on his observation of Appellant's struggle with Officers Rauchut and Sanchez, his training, and his five and one-half years' experience as a police officer, Officer Durando also believed Appellant was under the influence of narcotics or possibly PCP or K2. Officer Durando tased Appellant, and the officers were then able to arrest Appellant.

Procedurally, Appellant filed a motion to suppress the firearm on May 1,

2017. On July 24, 2017, the court conducted a suppression hearing and denied Appellant's motion. That same day, Appellant proceeded to a bench trial, and the court convicted Appellant of one count each of resisting arrest, possession of a firearm prohibited, firearms not to be carried without a license, and carrying firearms in public in Philadelphia. The court sentenced Appellant on December 20, 2017, to an aggregate term of ten (10) to twenty (20) years' incarceration.

On January 16, 2018, Appellant filed a timely notice of appeal. The court ordered Appellant on January 18, 2018, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant complied on February 26, 2018, following an extension. On January 19, 2019, Appellant filed in this Court an application for remand to allow him to file a supplemental Rule 1925(b) statement. This Court granted Appellant's application and remanded to the trial court on February 6, 2019. On February 26, 2019, Appellant filed a supplemental concise statement.

Appellant raises two issues for our review:

> DID NOT THE TRIAL COURT ERR BY FAILING TO SUPPRESS THE GUN SEIZED FROM APPELLANT WHERE HE WAS STOPPED, DETAINED, SEARCHED, AND ARRESTED IN THE ABSENCE OF REASONABLE SUSPICION OR PROBABLE CAUSE?
>
> WAS NOT THE EVIDENCE INSUFFICIENT TO FIND APPELLANT GUILTY BEYOND A REASONABLE DOUBT OF THE OFFENSE OF RESISTING ARREST, WHERE HE WAS UNLAWFULLY STOPPED, DETAINED, SEARCHED AND ARRESTED, AND POLICE WERE NOT EFFECTING A LAWFUL ARREST OR ANY OTHER DUTY AS REQUIRED BY 18

PA.C.S.A. § 5104 WHEN APPELLANT ALLEGEDLY VIOLATED [SECTION] 5104?

(Appellant's Brief at 4).

In his issues combined, Appellant argues the police officers stopped him based on a flash report lacking sufficient corroboration. Appellant asserts the flash description was vague, as it did not describe his height, weight, and facial hair or tattoos. Appellant avers his navy-blue shirt did not match the green shirt provided in the flash. Appellant claims the officers did not observe indicia of criminal activity, such as violence or a crowd, when they encountered him. Appellant maintains that the facts of having a sweatshirt around Appellant's waist, a sweaty appearance, and protruding neck veins do not suggest criminality or abuse of drugs. Appellant adds that yelling at an individual in a parked car also does not suggest criminal activity is afoot. Appellant stresses the officers saw the bulge at his waist only after he complied with their demand to approach. Appellant suggests the trial court incorrectly stated in its opinion that the officers exited their vehicle after they told Appellant to walk toward them. Appellant compares Officer Rauchut's testimony that the officers exited the patrol vehicle **before** they commanded Appellant to approach the car. Appellant contends the officers unlawfully detained him when they exited the patrol vehicle and ordered Appellant to walk toward them. Appellant insists the officers did not have reasonable suspicion criminal activity was occurring until after he approached them. As a result, Appellant contends the officers' recovery of the gun from Appellant's person was unlawful.

Appellant adds the Commonwealth failed to prove the officers lawfully arrested Appellant. Appellant contends the officers lacked reasonable suspicion to search Appellant and probable cause to arrest him. Appellant asserts the trial evidence was insufficient to convict him of resisting arrest. For these reasons, Appellant concludes this Court should vacate the judgment of sentence. We disagree.

Appellate review of an order that denied a motion to suppress evidence is as follows:

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

*Commonwealth v. Luczki*, 212 A.3d 530, 541-42 (Pa.Super. 2019) (quoting *Commonwealth v. Arter*, 637 Pa. 541, 546-47, 151 A.2d 149, 153 (2016)). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Luczki, supra* at 542 (quoting *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013)).

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to

demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Hampton***, 204 A.3d 452, 456 (Pa.Super. 2019). Because interactions between law enforcement and the general citizenry are widely varied, search and seizure law looks at how the interaction is classified and if a detention has occurred.

Our Supreme Court in ***Commonwealth v. Adams***, ___ Pa. ___, ___, ___ A.3d 1195, 1199-1200 (2019) recently reiterated the general levels or classifications of contacts between the police and the citizenry and reviewed long-standing precedent on the topic as follows:

> The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way. The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. A custodial detention also constitutes a seizure.

> No bright lines separate these types of [interactions], but the United States Supreme Court has established an objective test by which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter. The test, often referred to as the "free to leave test," requires the court to determine whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore

the police presence and go about his business. [W]henever a police officer accosts an individual and restrains his freedom to walk away, [the officer] has "seized" that person.

*Id.* at \_\_\_, 205 A.3d at 1199-1200 (most internal citations and quotation marks omitted). Whether a seizure has occurred, under the circumstances related in the undisputed testimony at a suppression hearing, is a question of law involving a plenary scope of review. *Commonwealth v. Au*, 615 Pa. 330, 337, 42 A.3d 1002, 1006 (2012). Our standard of review regarding questions of law is *de novo*.

*Luczki, supra* at 542-43 (some internal citations and quotation marks omitted).

When initially evaluating the level of interaction between law enforcement and a citizen to determine if a seizure occurred, "courts conduct an objective examination of the totality of the surrounding circumstances." *Commonwealth v. Lyles*, 626 Pa. 343, 350, 97 A.3d 298, 302 (2014).

The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and this Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter. [W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

This Court and the United States Supreme Court have repeatedly held a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification. Officers may request identification or question an

individual so long as the officers do not convey a message that compliance with their requests is required. Although police may request a person's identification, such individual still maintains the right to ignore the police and go about his business.

*Id.* at 350-51, 97 A.3d at 302-03 (internal citations and quotation marks omitted).

To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he…was not free to decline the officer's request or otherwise terminate the encounter. A variety of factors may influence this determination, including the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. As our High Court has explained, subtle factors as the demeanor of the police officer, the location of the confrontation, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements must be considered.

*Hampton, supra* at 457. In addition:

This Court has also set forth the following non-exclusive list of factors:

the number of officers present during the interaction; whether the officer informs the citizen [he is] suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Commonwealth v. Newsome*, 170 A.3d 1151, 1155 (Pa.Super. 2017) (internal citations omitted). Our Supreme Court has also stated:

> We recognize the conceptual difficulties inherent in the administration of the reasonable-person standard. Although the test is cast in objective terms, absent empirical proofs, there remains substantial room for reasonable disagreement concerning how such a hypothetical person might feel in any given set of circumstances. Such differences have been manifested, at both the federal and state level, in many divided opinions on the subject. Nevertheless, the High Court has settled on an approach allocating very modest weight to the possibility for psychological coercion arising from a fairly wide range of police conduct which may be regarded as being appropriate to and inherent in the circumstances facilitating the interaction. *Cf.* Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.4(a), at 425 (4th ed. 2004) (observing that "the confrontation is a seizure only if the officer adds to those inherent pressures by engaging in conduct significantly beyond that accepted in social intercourse[,]" which include moral and instinctive pressures to cooperate).

*Au, supra* at 338-39, 42 A.3d 1007-08 (most internal citations omitted). Thus, all law enforcement communications with a citizen do not automatically constitute detentions. *Lyles, supra* at 354, 97 A.3d at 304-05. With respect to the show of authority needed for a detention, the circumstances must present some level of coercion, beyond the officer's mere employment, that conveys a demand for compliance or threat of tangible consequences from refusal. *Commonwealth v. Young*[*, E.*], 162 A.3d 524, 529 (Pa.Super. 2017) (citing *Lyles, supra* at 353-54, 97 A.3d at 304).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least

a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

\* \* \*

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted). The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity.

In making this determination, we must give due weight…to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Young*[*, R.*], 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (internal citations and quotation marks omitted). "[W]hether the defendant was located in a high crime area…supports the existence of reasonable suspicion." *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa.Super. 2009) (*en banc*), *appeal denied*, 605 Pa. 694, 990 A.2d 727

(2010) (internal citations omitted).

***Luczki, supra*** at 543-45 (some internal citations and quotation marks omitted).

> "Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which [the officer] has reasonably trustworthy information, are sufficient to warrant [an officer] of reasonable caution in the belief that the suspect has committed or is committing a crime." ***Commonwealth v. Thompson***, 604 Pa. 198, 203, 985 A.2d 928, 931 (2009) (internal quotation marks omitted).
>
>> The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.
>
> ***Id.*** (emphasis in original) (internal citations and quotation marks omitted). The officer's training and experience are a factor in determining probable cause but relevant to the issue only if there is a nexus between those skills and the search and seizure of the person and/or evidence. ***Id.*** at 210, 985 A.2d at 935.
>
> "Although cases involving similar or comparable seizure determinations may serve as guideposts, a suppression court must independently employ the totality-of-the-circumstances test in determining whether a seizure occurred." ***Lyles, supra*** at 354, 97 A.3d at 305. ***See, e.g., id.*** (holding that no single factor controls in seizure-of-person analysis; police officer's request for identification alone does not raise escalatory inference of detention; courts must make independent examination of totality of circumstances surrounding interaction to determine if seizure occurred; concluding no "seizure" occurred in absence of credible evidence of physical restraint, weapons used, blockade or obstruction of citizen's ability to walk away; tenor of interaction was not inherently coercive); ***Au, supra*** (holding unrebutted testimony of officer established

only mere encounter with Appellee had occurred, when officer interacted with Appellee in public, did not activate emergency lights, did not block Appellee's car, did not brandish weapon, make intimidating movement or overwhelming show of force, threat, or command, or speak in authoritative tone; use of officer's headlights and flashlight was in furtherance of officer's safety and within ambit of acceptable, non-escalatory factors); **Newsome, supra** (holding defendant was not "seized" during his initial interaction with officer, where officer responded to radio call in marked cruiser and saw Appellee walk away from group of males; officer exited his vehicle and told Appellee to "come here," but Appellee refused and continued to walk away; officer then observed Appellee remove object and place it in nearby flowerpot; object later recovered was firearm); **Young**[**, E.**]**, supra** (holding initial interaction with Appellee was mere encounter, when three officers in plainclothes exited an unmarked vehicle, approached Appellee on public street and asked Appellee what he was doing and whether he had anything on his person that could harm officers; two brief questions constituted mere encounter, as there was no restraint of Appellee's liberty, no physical force, and no show of authority or level of coercion, beyond officer's mere employment, to convey demand for compliance or threat of tangible consequences from refusal). **Compare Adams, supra** (holding interaction between police officer and defendant was investigative detention, where officer would not allow defendant to leave his vehicle; officer did not simply request that defendant stay in his car; instead, officer physically closed car door and barred defendant's exit; officer's action of physically closing door as defendant opened it communicated demand to remain in car at that location; officer's acts constituted type of escalatory factor that signals "seizure" by restraint of freedom); **Commonwealth v. Livingston**, 644 Pa. 27, 174 A.3d 609 (2017) (plurality) (holding interaction between police officer and defendant was investigative detention, where defendant's car was already parked on side of interstate highway, and officer pulled his patrol car alongside defendant's car, with his emergency lights activated, ostensibly under community caretaking function, but officer was unable to articulate specific and objective facts to suggest defendant needed assistance); **Hampton, supra** (holding interaction between

- 13 -

police officer and defendant was investigative detention, where defendant drove his vehicle from roadway into church field, and officer pulled her marked vehicle into field behind defendant's car, effectively blocking his exit, as defendant's vehicle was facing building so he could not travel forward). Importantly, "The issue of whether an individual has been seized is distinct from the issue of whether that seizure was reasonable." *Hampton, supra* at 458.

*Luczki, supra* at 545-46.

A challenge to the sufficiency of the evidence implicates the following legal principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Jones, supra* at 120-21 (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

Section 5104 of the Crimes Code defines resisting arrest or other law enforcement as follows:

- 14 -

### § 5104. Resisting arrest or other law enforcement

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104.

Instantly, testimony at the suppression hearing revealed Officers Rauchut and Sanchez were patrolling in Philadelphia in full uniform and in a patrol car, when they received a flash report at approximately 10:45 a.m. The report specified the suspect was a male with a gun, wearing a green t-shirt and blue jeans, and possibly high on narcotics. The report also indicated the suspect was near the 1200 block of Lycoming Street, a location the officers knew was an area of high drug activity and extreme violence. Approximately four minutes after receiving the flash report, the officers discovered Appellant standing in the middle of street on the 1300 block of Lycoming Street. The officers observed Appellant yelling at a man sitting inside a parked car; Appellant was sweating profusely, and his neck veins were visibly engorged. Appellant was wearing blue jeans and a navy-blue t-shirt, with a sweatshirt wrapped around his waist. Based upon his years of experience as a police officer and his observations of Appellant's conduct, Officer Rauchut believed Appellant was under the influence of illicit drugs.

During their initial interaction with Appellant, the officers approached in the patrol vehicle, with the vehicle's lights and siren off. Appellant correctly

notes that the record shows the officers then exited their patrol vehicle before speaking to him. Once outside the vehicle, Officer Rauchut said to Appellant, "Hey, what's going on, man? You want to come over to my car?" Appellant complied and approached the patrol vehicle. That was the sum and substance of their initial interaction.

This initial interaction between the officers and Appellant was limited, informal, and carried all the hallmarks of a mere encounter. In detail, the interaction occurred in daylight and on a public street. The interaction involved no lights, guns, intimidating movement or potent show of force, obstruction, or physical restraint. The officers were in full uniform and had arrived in a marked police vehicle, both of which merely identified their employment and conveyed no demand for compliance or threat of tangible consequences from refusal. *See Young, E., supra*. Whether the officers were inside or outside the patrol vehicle when they asked Appellant to approach them, is of no moment. In either circumstance, the officers' conduct and limited contact with Appellant fell within the ambit of non-escalatory conduct; and their initial interaction with Appellant was a mere encounter. *See Au, supra*; *Newsome, supra*; *Young, E., supra*.

As Appellant approached the officers, Officer Rauchut observed a bulge on Appellant's waist, around which Appellant had wrapped a sweatshirt. Based on his training and experience, Officer Rauchut believed the bulge was a gun. As a result, Officer Rauchut asked Appellant to place his hands on the

vehicle so the officers could perform a protective search, but Appellant refused to comply. Although Officer Rauchut repeated the instruction several times, Appellant remained obstinate and did not heed the directive. When Officer Rauchut attempted to place Appellant's arm behind his back to secure him, Appellant reached into his waistband and grabbed a gun. Officer Rauchut and Appellant struggled for nearly one minute until Officer Sanchez was able to remove the gun from Appellant. Meanwhile, Officer Durando approached to assist in apprehending Appellant. Based upon his observations and multiple years of police service, Officer Durando believed Appellant's behavior exhibited signs of illicit drug use.

The nature of Appellant's encounter with the officers escalated when he approached the patrol vehicle and Officer Rauchut saw what he believed to be a gun in Appellant's waistband. At that point, Officer Rauchut attempted to perform a protective search and asked Appellant to place his hands on the patrol vehicle. Appellant's prolonged refusal to comply prompted Officer Rauchut to grab Appellant's arm in an attempt to place the arm behind Appellant's back and effectuate the search. In addition to the appearance of a firearm on Appellant's person, several factors supported Appellant's detention, including: Appellant's presence near the initial location referenced in the flash report; Appellant's appearance roughly matching the flash report description (*see Commonwealth v. Thomas*, 179 A.3d 77 (Pa.Super. 2018) (providing reasonable suspicion may arise even when suspect does not match

flash report description exactly)); Appellant's standing in the middle of the road yelling at a person inside a parked car, along with his agitated and sweaty physical condition leading Officer Rauchut to believe Appellant was under the influence of drugs; Appellant's apparent drug use and possession of a firearm matching the flash report of an individual with a gun high on narcotics; and Appellant's presence in an area known for high drug activity and extreme violence. Under the totality of the circumstances, the officers had reasonable suspicion to search Appellant for a firearm on his person. *See Foglia, supra*; *Young, R., supra*; *Jones, supra*. Additionally, Appellant's interaction with the police escalated further when Appellant pulled a gun out of his waistband. Appellant's possession of a gun in a high crime area, along with his reaching for and holding it while the officers were attempting to search him, gave rise to probable cause. *See Thompson, supra*. Upon our independent review of the totality of the circumstances, we conclude the record supports the court's decision to deny Appellant's suppression motion. *See Luczki, supra*; *Clemens, supra*.

Regarding Appellant's related sufficiency challenge, the police lawfully arrested Appellant, for the reasons we have already discussed. Therefore, Appellant's sufficiency claim merits no relief. *See Jones, supra*; 18 Pa.C.S.A. 5104. Accordingly, we affirm.

Judgment of sentence affirmed.

President Judge Emeritus Stevens joins this memorandum.
Judge Stabile concurs in the result.

- 18 -

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date:* *4/6/2020*