J-S22027-20

2020 PA Super 133

| | | |
|---|---|---|
| IN THE INTEREST OF: G.E.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.E.W., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1873 MDA 2019 |

Appeal from the Dispositional Order Entered June 13, 2019
In the Court of Common Pleas of Luzerne County Juvenile Division at
No(s):  CP-40-JV-0000147-2019

BEFORE:   OLSON, J., MURRAY, J., and COLINS, J.[*]

OPINION BY MURRAY, J.:                    **FILED: JUNE 8, 2020**

G.E.W. (Appellant) appeals from the dispositional order entered after the juvenile court adjudicated her delinquent of one count of sexual abuse of children and two counts of indecent assault.[1]  Appellant challenges the sufficiency of the evidence to sustain the sexual abuse of children adjudication, as well as the denial of her suppression motion.  We affirm.

The juvenile court recounted the relevant facts:

Detective Charles J. Balogh, Jr. testified that on March 12, 2019, he received an email from the National Center for Missing and Exploited Children and a call from the Internet Crimes Against Children's Task Force's Commander that it "had a priority two cybertip where a minor 8-year-old child [(Victim)] is being sexually exploited and/or molested."  A priority two cybertip means that it believes "that a child is in [imminent] danger of being sexually molested and/or exploited.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6312(b)(2) and 3126(a)(4) and (7).

He further explained "that there is a [26]-year-old male and a 17-year-old female [(Appellant)] that were sexually exploiting and/or molesting an 8-year-old . . . [c]hild victim." He explained that the origin of the cybertip was reported to be from Facebook. "This report was generated by Facebook because the [26]-year-old . . . and [Appellant] were using Facebook Messenger." "There were two different IP addresses, one for the alleged [26]-year-old male individual and [Appellant]. . . .

Detective Balogh further testified that by using the IP address provided to him and the Facebook profile connected to same, he was able to ascertain the name, home address, date of birth, email addresses and school of the owner of that IP address as that of [Appellant] . . . . Additionally, he stated Facebook provided him with "excerpts of the sexually-explicit conversation between [Appellant] and later determined to be her co-defendant [N.H.[2]]. . . . Further, Detective Balogh stated he was able to determine that the other co-actor was physically located in "Perryopolis, Pennsylvania."

Detective Balogh testified he read the entire conversation and confirmed the identity of the 8-year-old [Victim]. He determined the [Victim] was the niece of [Appellant] and she was visiting the home of [Appellant's] mother and father . . . .

Detective Balogh testified to the "fact that the [Appellant] was inappropriately touching her 8-year-old niece and specifically being told by her co-defendant what to do. And I could tell by that . . . there's a visual, that she was providing visual access because the co-defendant is telling her how the body positioning is and what she should be doing which would indicate clearly that he's seeing and she's providing visual access to [Victim]." [Appellant] further recalled her niece's "vagina being wet."

Detective Balogh continued to state that on March 12, 2019, Luzerne County Detective Daniel Yursha and he proceeded to [Appellant's residence] and met the parents of [Appellant] and her outside the home. The detectives, [Appellant], her mom and dad, "moved into the residence, inside the kitchen area." Detective

_____

[2] Although not entirely clear from the record, it appears the 26-year-old male uses several aliases. The juvenile court, Commonwealth and Appellant refer to him by different names; for clarity, we refer to him as "N.H."

Balogh said he "explained the cybertip in its entirety and told them why I was there, the purpose of my visit."

. . . Detective Balogh further stated after explaining they were there regarding a cybertip, they provided [Appellant] with **Miranda**[3] warnings and explained those rights to her and her parents. "Even prior to advising the defendant and her parents of the constitutional warnings, I explained to them we're here from a cybertip which involved a minor child and explained what was going on and why we were there . . . I asked if we could come in. They said, you're more than welcome to come in. And at that point, we did sit down and talk to [Appellant] and both her parents," Balogh stated. I told [Appellant] during the constitutional warnings she was free to stop me at any time . . . [s]he never asked to leave the room. Had she, I would have allowed it," Detective Balogh stated. Additionally, ". . . I advised her she had a right to counsel right on the constitutional warning form which she signed, along with her parents."

[Appellant] "got very emotional. She was upset and she made a comment very early on that he --," Balogh testified. "Yes she made the comment that he better get in trouble, too. And more or less she told me on numerous occasions that he's the one who made her do what she did . . . [s]he admitted to not only using Facebook Messenger and video so that there is a – she also admitted to the chat conversation; specifically, when I went into detail about some of the things that were said, she admitted to those comments and those – that she in fact is the one who responded."

Balogh testified [Appellant] "told me that she did in fact lift up [Victim's] shirt, exposing her breast, to provide visual access to her co-defendant. In addition to that, she had put her hand inside of her niece's pants and underwear . . . and put her hand inside her vagina area."

On cross-examination, Detective Balogh testified that he was not provided the live feed of the incident. He later learned that Facebook did not preserve the live video. . . ."

Juvenile Court Opinion, 10/11/19, at 3-7.

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 3 -

The Commonwealth filed a delinquency petition on April 25, 2019, seeking to have Appellant adjudicated delinquent of one count of sexual abuse of children and two counts of indecent assault. Appellant filed a suppression motion alleging that her statement to police was unlawfully obtained because she did not knowingly or voluntarily waive her **Miranda** rights. The juvenile court, following a hearing, denied the suppression motion. At a subsequent hearing, the juvenile court adjudicated Appellant delinquent of the aforementioned offenses. The juvenile court entered its dispositional order and Appellant filed a timely notice of appeal.[4]

Appellant presents this Court with three issues:

1. Did the trial court err as a matter of law or abuse its discretion in failing to suppress an illegally obtained statement of the [Appellant] in violation of her 5th and 6th Amendment of the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution?

2. Did the trial court err as a matter of law or abuse [its] discretion in failing to preclude the admission of the [Appellant's] illegally obtained statement where the evidence produced by the Commonwealth failed to satisfy the *corpus delicti* rule?

3. Did the Commonwealth failed [*sic*] to prove, beyond a reasonable doubt, that the [Appellant] violated 18 Pa.C.S.A. § 6312(b)(2) in that the Commonwealth presented insufficient evidence to establish that the [Appellant] engaged in a "prohibited sexual act" as defined in 18 Pa.C.S.A. § 3101?

Appellant's Brief at 3.

_____

[4] We note that Appellant filed her brief 25 days late; although the Commonwealth sought permission for an extension of time to file a brief, as of this writing, no brief has been filed.

- 4 -

We first consider Appellant's suppression claim. "When reviewing the propriety of a suppression order, we are required to determine whether the record supports the factual findings of the suppression court, and we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *In the Interest of N.B.*, 187 A.3d 941, 945 (Pa. Super. 2018) (*en banc*) (internal quotation marks omitted). As the Commonwealth prevailed below, we "may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *In re B.T.,* 82 A.3d 431, 435 (Pa. Super. 2013). However, we are not bound by the juvenile court's legal conclusions, which we review *de novo*. *N.B.*, 187 A.3d at 945.

Appellant alleges violation of her *Miranda* rights. The following legal principles govern:

> To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects subject to custodial interrogation by law enforcement officers must be warned that they have the right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney. Juveniles, as well as adults, are entitled to be apprised of their constitutional rights pursuant to *Miranda*.

*B.T.*, 82 A.3d at 436.

Once a person asserts his or her election to remain silent, the right must be "scrupulously honored" by the authorities. *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). "If an individual indicates in any manner, at any time prior

to or during questioning, that he wishes to remain silent, the interrogation must cease, and any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." *Commonwealth v. Frein*, 206 A.3d 1049, 1064 (Pa. 2019).

"If a suspect makes a statement during custodial interrogation, the burden is on the [Commonwealth] to show, as a prerequisite to the statement's admissibility in the [Commonwealth's] case in chief, that the defendant voluntarily, knowingly and intelligently waived his rights." *B.T.*, 82 A.3d at 436. In determining whether a juvenile's waiver was valid, we analyze the totality of the circumstances, including,

> the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult. Other factors to consider in this context also include: (1) the duration and means of the interrogation; (2) the juvenile's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors that could drain the juvenile's ability to withstand suggestion and coercion.

*N.B.*, 187 A.3d at 945.

Instantly, because Appellant failed to request the transcript of her suppression hearing, this issue is waived. "The fundamental tool for appellate review is the official record of the events that occurred in the trial court." *Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*) (citation omitted). The certified record consists of "original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if

any, and a certified copy of the docket entries prepared by the clerk of the lower court[.]" Pa.R.A.P. 1921. Items that are not part of the certified record cannot be considered on appeal. ***See Preston***, 904 A.2d at 6. In Pennsylvania, we place the responsibility of ensuring that the record on appeal is complete "squarely upon the appellant and not upon the appellate courts." ***Id.***, at 7 (citing Pa.R.A.P. 1931).

With regard to transcripts, our Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary for resolution of the issues appellant raises on appeal. ***See*** Pa.R.A.P. 1911(a). When an appellant fails to adhere to the precepts of Rule 1911 and order all necessary transcripts, "any claims that cannot be resolved in the absence of the necessary transcripts or transcripts must be deemed waived for the purpose of appellate review." ***Preston***, 904 A.2d at 7 (citation omitted).

Here, our thorough review of the record indicates that the suppression hearing was never transcribed, and Appellant, who is represented by counsel, failed to request the transcript. We are therefore unable to conduct meaningful review of Appellant's suppression issue. Also, because Appellant failed to request the transcript and file it with the juvenile court, we do not find the absence of the transcript attributable to a breakdown in the judicial process. ***See id.***, at 18 ("An appellant should not be denied appellate review if the failure to transmit the entire record was caused by an 'extraordinary

breakdown in the judicial process.'"). In sum, Appellant's suppression issue is waived.[5]

Although we find that Appellant waived her first issue, Appellant revisits the admissibility of her confession in her second issue. Specifically, Appellant contends that the trial court erred by considering her confession as evidence of Appellant having committed the crime of sexual abuse of children because the Commonwealth failed to establish the *corpus delicti* for that offense. Appellant's Brief at 15.

The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the juvenile court is limited to a determination of whether the court abused its discretion.

> "The *corpus* [*delicti*] . . . rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." "The Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the *corpus delicti* of a crime, but the evidence must be more consistent with a crime than with [an] accident." The *corpus*

---

[5] Our review of the parties' submissions and the certified record in this case reveals that, although Appellant cited to the notes of testimony from the suppression hearing in her brief, she failed to include the transcript of the proceeding in the record before us. This Court made an informal inquiry to locate and obtain the notes of testimony as it appeared that an oversight prevented such materials from reaching us. Despite this, there is no indication that Appellant requested the transcripts for the May 29, 2019 hearing and no transcript was included in the record before us. Since Appellant did not include the transcript in the certified record, we find that she waived appellate review of this claim. **See Commonwealth v. O'Black**, 897 A.2d 1234, 1238 (Pa. Super. 2006) (holding that the burden always remains on the Appellant to ensure that the record is complete on appeal).

*delicti*, or "body of the crime," may be proven by circumstantial evidence.

Our Court has explained:

Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

***Commonwealth v. Harper***, -- A.3d --, 2020 WL 1516934, at *7 (Pa. Super. 2020) (quoting ***Commonwealth v. Murray***, 174 A.3d 1147, 1153-54 (Pa. Super. 2017)). Simply put, the Commonwealth cannot convict a defendant solely upon their confession. ***See id.***

Detective Balogh was the only witness to testify at Appellant's dispositional hearing. Before the Commonwealth sought to introduce Appellant's confession, Detective Balogh testified that on March 12, 2019, he received a priority two cyber tip from the National Center for Missing and Exploited Children concerning a 26-year-old male (N.H.) instructing a 17 year-old female (Appellant) to sexually exploit and/or molest an 8-year-old victim (Victim). N.T., 6/3/19, at 13. The cybertip alleged that Appellant used Facebook Messenger to communicate with N.H., and N.H. encouraged Appellant to touch the Victim while she was asleep. Appellant livestreamed a video, which muted all sound, to allow N.H. to see, in real time, what Appellant was doing. Appellant and N.H. then used the chat component of Facebook

Messenger to communicate, and for N.H. to instruct Appellant on where to touch Victim.  The cybertip included excerpts of the conversation, including multiple instances of Appellant describing to N.H. how the Victim's vagina felt.  ***See*** Cybertipline Report 47376092, 3/7/19, at 7, 9, 11.

This evidence is consistent with a determination that Appellant sexually abused a child.  ***See Commonwealth v. Friend***, 717 A.2d 568, 569-70 (Pa. Super. 1998) ("The *corpus delicti* may be established by circumstantial evidence.").  Thus, we conclude that the evidence was sufficient to establish the *corpus delicti* for sexual abuse of children.  Consequently, the juvenile court did not abuse its discretion by denying Appellant's motion to exclude Appellant's confessional statement.

In her third and final issue, Appellant challenges the sufficiency of the evidence to support her adjudication for sexual abuse of children under 18 Pa.C.S.A. § 6312(b)(2) (photographing/videotaping/depicting on computer or filming sexual acts).  Our standard of review is as follows:

> When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

*In the Interest of J.G.*, 145 A.3d 1179, 1188 (Pa. Super. 2016) (citations omitted).

The subsection of sexual abuse of children, under which Appellant was adjudicated delinquent, provides:

**§ 6312. Sexual abuse of children**

\* \* \*

**(b) Photographing, videotaping, depicting on computer or filming sexual acts.—**

\* \* \*

(2) Any person who knowingly photographs, videotapes, depicts on computer or films a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such an act commits an offense.

18 Pa.C.S.A. § 6312(b)(2). "Prohibited sexual act" is defined as "[s]exual intercourse . . ., masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." 18 Pa.C.S.A. § 6312(g). "The purpose of Section 6312 is plainly to protect children, end the abuse and exploitation of children, and eradicate the production and supply of child pornography." *Commonwealth v. Baker*, 24 A.3d 1006, 1036 (Pa. Super. 2011).

Appellant appears to be challenging two elements: 1) engaging in a prohibited sexual act; and 2) depicting the act on a computer. Appellant's

- 11 -

Brief at 19-22. We first address the prohibited sexual act. In challenging this element, Appellant argues:

> The record is devoid of any indication that the minor victim disclosed to authorities that she had been inappropriately touched or in any manner treated. The Commonwealth, likewise, presented no videos or pictures, or even a record of a live video feed related to the minor victim and the [Appellant]. Rather, the Commonwealth, during the course of the adjudicatory hearing, relied on the interpretations of Detective Balogh of the cyber tip and the [Appellant's] statement. However, to rely on the interpretation of Detective Balogh, who was not offered as an expert, as sufficient evidence, beyond a reasonable doubt, to prove the current charge, required not only speculation and conjecture, but also unreasonable interference.

Appellant's Brief at 20 (citations omitted).

Appellant focuses on the credibility and reliability of Detective Balogh. A challenge to the credibility or reliability of the Commonwealth's witnesses goes to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (claim that the Commonwealth's evidence lacked credibility goes to the weight of the evidence). Because Appellant failed to preserve a weight claim, this challenge is waived. *See Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (stating that a weight claim must be presented to the trial court, because appellate courts review a trial court's "exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence"). Therefore, Appellant is not entitled to relief.

In her second sufficiency challenge, Appellant asserts that the evidence was insufficient to "confirm that any prohibited sexual act or nudity were

actually depicted by video or live stream . . . ." Appellant's Brief at 21.

Appellant contends, "[b]ecause it cannot be concluded from the evidence at

the adjudicatory hearing what was actually depicted in a video or live stream

video or even if the same occurred, the Commonwealth cannot and did not

sustain its burden of proof." *Id.*

This Court examined a similar challenge in *Commonwealth v. Levy*,

83 A.3d 457 (Pa. Super. 2013). Levy challenged the "computer depiction"

element of sexual abuse of children. Levy argued that his utilization of Skype[6]

with the victim "did not amount to a 'computer depiction' for the purposes of

his convictions for sexual abuse of children . . . ." *Id.* at 460.

In rejecting Levy's challenge, this Court opined:

> When a person uses Skype, his or her computer monitor displays
> the video images of the other participant. We have little trouble
> concluding that such a display amounts to "showing" or
> "representing" an image as the common and approved usages of
> the term contemplates. We find the example attendant to
> Webster's definition of "depict" to be particularly instructive. In
> that example, the photograph "depicts" two brothers standing in
> front of a store. The common usage of the term includes a
> physical object, the photograph, displaying a real image. We find
> little difference between analogizing this common usage of the
> term to an image, live or still, appearing on a computer screen. A
> person who looks at the picture in the example will see two
> brothers standing in front of a store. That image is "depicted" to
> the viewer. There would be no difference if the person viewed
> that image in a photograph or on a computer screen.

---

[6] Like Facebook Messenger, "Skype is an internet communication service that
provides live, two-way audio and video communication." *Commonwealth v.
Levy*, 83 A.3d 457, 463 (Pa. Super. 2013) (quoting *Julian v. State*, 319
Ga.App. 808, 738 S.E.2d 647, 649 n.4 (2013) (citation omitted)).

*Id.* at 463.

For the same reasons as those stated in *Levy*, we conclude that the images projected on a computer monitor by the use of Facebook Messenger constitute "computer depictions" for the purposes of Appellant's sexual abuse of children delinquency adjudication. As such, the evidence, including the Facebook Messenger chat transcript between Appellant and N.H. and Appellant's confessional statement to police, was sufficient to support the adjudication. *See* Cybertipline Report 47376092, 3/7/19, at 7, 9, 11 (Appellant describing to N.H. how Victim's vagina feels to the touch); *see also* Affidavit of Probable Cause, 4/25/19, at 3 (stating that Appellant "does admit to putting her hands inside [Victim's] pajamas and underwear in an attempt to touch [Victim's] vagina," and "[Appellant] admitted to lifting up [Victim's] shirt to show [N.H.] her breast. . . ."). Accordingly, Appellant's sufficiency issue is meritless.

Dispositional order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2020