J-A06017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH PLESO | : | |
| | : | |
| Appellant | : | No. 528 WDA 2022 |

Appeal from the Judgment of Sentence Entered March 23, 2022
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001211-2021

BEFORE: OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:           **FILED: JUNE 12, 2023**

Appellant Joseph Pleso appeals from the judgment of sentence imposed following his conviction for driving under the influence (DUI)—general impairment (first offense) and a related summary offense. Appellant argues that the trial court erred in denying his motion to suppress. Appellant also raises claims concerning the trial court's evidentiary rulings and challenges the sufficiency and weight of the evidence. We affirm.

The trial court set forth the following summary of the factual history:

At approximately 5:07 p.m. on August 3, 2020, Pennsylvania State Police Trooper Michael Quinn [(Corporal Quinn)] was conducting radar surveillance in an unmarked patrol unit in the vicinity of the intersection of Auto Auction Road and PA State Route 51 near Uniontown when he observed a vehicle traveling Southbound in the left lane of PA State Route 51 at a high rate of speed. [Corporal] Quinn measured the vehicle's speed at 62 MPH

---

[*] Retired Senior Judge assigned to the Superior Court.

using his radar gun. The Commonwealth submitted the certificate of calibration for [Corporal] Quinn's radar gun. The [trial court took] judicial notice of the fact that the posted speed limit on PA State Route 51 is 45 MPH for at least two miles before this location and that there is a 45 MPH speed limit sign approximately three hundred feet before the location where the vehicle was first seen.

[Corporal] Quinn activated his patrol unit's lights and siren and began pursuing the vehicle. The Commonwealth submitted the Mobile Video Recording (MVR) of the incident. The [trial court] reviewed the MVR of the incident. The vehicle's high rate of speed is evident from the MVR. [Corporal] Quinn pursued the vehicle for approximately three tenths of a mile. The vehicle then decelerated forcibly, crossed the right lane without signaling, and came to a stop on the right shoulder of PA State Route 51 . . . .

The [trial court] notes that this incident took place during peak rush hour. The MVR shows that several vehicles drove dangerously close to [Appellant] as he stood upon the fog line. The [trial court] also notes that this incident took place approximately one car length before an entrance to a large Ollie's parking lot. [Appellant] evidently chose to stop the vehicle on the busy highway by choice, forgoing the much safer (and adjacent) parking lot.

[Corporal] Quinn began ordering [Appellant] to get back in the vehicle for his own safety. [Appellant], however, did not get back in the vehicle, but continued to stand [] on the fog line of PA State Route 51 and shout at [Corporal] Quinn. [Corporal] Quinn called for backup. At one point, [Appellant] shouted that he "had a knife." [Appellant] then walked over to the grassy area between the shoulder of PA State Route 51 and the Ollie's parking lot. Three additional patrol vehicles arrived on the scene. [Appellant] refused to identify himself and was handcuffed. [Corporal] Quinn informed [Appellant] that he was in an investigative detention. [Corporal] Quinn walked to the vehicle and, through its closed windows, observed vomit in the driver's seat area. Meanwhile, [Appellant] continued to equivocate and make nonchalant comments to the Troopers about criminal law. [Corporal] Quinn asked [Appellant] why there was vomit in the vehicle. [Appellant] told [Corporal] Quinn that he had recently drank a fifth of vodka.

Trial Ct. Op. & Order, 9/20/21, at 1-3. Following the stop, Appellant was charged with DUI–general impairment, carrying and exhibiting driver's license on demand, driving vehicle at safe speed, maximum speed limit, and careless driving.[1]

Appellant subsequently filed a pretrial motion in which he argued, among other things, that his statement to Corporal Quinn should be suppressed. *See* Appellant's Omnibus Pretrial Motion for Relief, 8/23/21. Following a hearing, the trial court denied Appellant's motion. The matter proceeded to a non-jury trial on February 15, 2022. Ultimately, the trial court convicted Appellant of DUI and exceeding the maximum speed limit and acquitted Appellant of the remaining charges. On March 23, 2022, the trial court sentenced Appellant to a term of six months' probation. Appellant timely filed post-sentence motions, which the trial court denied.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. In lieu of a Rule 1925(a) opinion, the trial court issued an order adopting its prior opinion and order denying Appellant's pretrial motion. *See* Trial Ct. Op. & Order, 9/20/21.

On appeal, Appellant raises the following issues:

1. Whether the trial court erred and abused its discretion in denying Appellant's motion to suppress because the Commonwealth did not meet its burden of proof without the presence and testimony of Corporal Quinn to demonstrate that

---

[1] 75 Pa.C.S. §§ 3802(a)(1), 1511(a), 3361, 3362(a)(3), and 3714(a), respectively.

- 3 -

Appellant's arrest and interrogation without establishing the *corpus delicti* and issuing **Miranda**[2] warnings was lawful and his statements admissible[?]

2. Whether the trial court erred and abused its discretion in denying Appellant's motion for continuance of the trial because the witness from Uniontown Hospital to authenticate the blood result taken from Appellant failed to show despite being properly subpoenaed, there was no evidence to support the *sua sponte* scientific analysis used to discredit and devalue the potential weight of such blood evidence, including the finding that Appellant "the person tested" could have manipulated the test results, there was no evidence defense counsel could have obtained sealed hospital records, there was advance notice of the proffered scientific evidence to the Commonwealth, and the test of Appellant's blood alcohol content was the only objective scientific evidence available in determining whether alcohol had impaired his ability to safely drive and the probative value of this evidence far outweighed any prejudice from the delay of a continuance so the subpoena could be properly enforced[?]

3. Whether the trial court erred and abused its discretion in terminating and/or circumscribing defense counsel's cross-examination of [Corporal] Quinn because the best-evidence rule does not apply to the MVR recording and audio transcript so as to proscribe or limit cross-examination or impeachment as unnecessary after direct testimony was given, and the credibility of [Corporal] Quinn was at issue and the Commonwealth's case based primarily on his opinion of that Appellant was under the influence of alcohol to such a degree as to render him incapable of safe driving[?]

4. Whether the trial court erred and abused its discretion in denying Appellant's motion for judgment of acquittal because the evidence presented by the Commonwealth was insufficient to support each element of the charge of DUI at Count 1, and the evidence was insufficient to support a guilty verdict beyond a reasonable doubt as to said count and charge insofar as there being nothing more than the appearance of possible vomit – undermined by the failure to verify it was vomit despite having the opportunity to do so and to preserve any such alleged evidence[?]

_____

2 **Miranda v. Arizona**, 384 U.S. 436 (1966).

5. Whether the trial court erred and abused its discretion in denying Appellant's motion for new trial because the guilty verdict at Count 1 for the charge of DUI was against the weight of the evidence presented at trial in that there was no evidence that Appellant's behavior was indicative of alcohol impairing his ability to drive safely and to the contrary the evidence was that his behavior in getting out of the car and refusing to get back in was based on his concern for safety and his distrust of the police and that this behavior caused Cpl. Quinn to be concerned for his own safety and not concerned that Appellant was too drunk to drive[?]

Appellant's Brief at 4-6.

**Motion to Suppress**

In his first claim, Appellant argues that the trial court erred in denying his motion to suppress. *Id.* at 13. Specifically, Appellant asserts that because Corporal Quinn did not testify at the suppression hearing, the Commonwealth failed to meet the *corpus delicti* rule or establish that Appellant's non-**Mirandized** statements were admissible. *Id.*

When reviewing the denial of a motion to suppress evidence, we employ the following standard of review:

[O]ur review is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Lear***, 290 A.3d 709, 715 (Pa. Super. 2023) (citations omitted and formatting altered).

First, with respect to *corpus delicti*, Appellant argues that the Commonwealth failed to establish *corpus delicti* for both DUI and speeding. Appellant's Brief at 13. Specifically, Appellant contends that the Commonwealth failed to establish that the crimes actually occurred before Appellant admitted to consuming a fifth of vodka. ***Id.*** at 14.

This Court has explained:

The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the [trial] court is limited to a determination of whether the court abused its discretion.

The *corpus* [*delicti*] . . . rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the *corpus delicti* of a crime, but the evidence must be more consistent with a crime than with [an] accident. The *corpus delicti*, or "body of the crime," may be proven by circumstantial evidence. . . .

\* \* \*

Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

Simply put, the Commonwealth cannot convict a defendant solely upon their confession.

*Interest of G.E.W.*, 233 A.3d 893, 900 (Pa. Super. 2020) (citations omitted and formatting altered).

> Here, the trial court explained:
>
> At the time [Appellant] made the statement to [Corporal] Quinn that he had recently drank a fifth of vodka, the [trial court] reiterates:
>
> That [Appellant] had been observed driving 62 MPH in a 45 MPH zone;
>
> That he had decelerated forcibly;
>
> That he had exited his vehicle . . . ;
>
> That he had shouted at [Corporal] Quinn;
>
> That he had shouted at [Corporal] Quinn that he "had a knife,"
>
> That backup had arrived;
>
> That he had exhibited bizarre and fluctuating emotions;
>
> That he had refused to identify himself;
>
> That he had been handcuffed a short distance away from the vehicle, and that [Corporal] Quinn had observed vomit in the driver's seat of the vehicle.

Trial Ct. Op. & Order at 7 (some formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court in rejecting Appellant's *corpus delicti* claim. *See Lear*, 290 A.3d at 715. As noted by the trial court, the Commonwealth presented, at the suppression hearing, a video of Appellant's encounter with Corporal Quinn. *See* N.T. Omnibus Hr'g, 9/13/21, at 7-8. Therefore, even without Appellant's statements, the Commonwealth established the *corpus delicti* for DUI. *See*

*Lear*, 290 A.3d at 715; *Commonwealth v. Murray*, 174 A.3d 1147, 1154 (Pa. Super. 2017). Therefore, Appellant's *corpus delicti* claim is without merit.

Next, with respect to Appellant's **Miranda** claim*,* Appellant contends that Appellant was "handcuffed, forcibly detained, and fully 'in custody' for the purpose and requirement of the issuance of **Miranda** warnings." Appellant's Brief at 18. Appellant further argues that at the time of his "alleged incriminating statement, he was completely unaware of [Corporal] Quinn's reason for the interrogation or that it was his suspicion that he was driving while intoxicated." **Id.**

In reviewing Appellant's claim, we are guided by the following principles:

Initially, we note the courts have recognized there are three levels of interaction between the police and citizens: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention. Thus, we have stated:

A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.

In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

It is long-settled that **Miranda** warnings are only required for the third-level interaction, *i.e.*, custodial interrogation. However, it is equally settled law that a motor vehicle stop is generally a second-level interaction, an investigative detention. During a traffic stop,

it is inherently reasonable for an officer to order the driver of the vehicle to alight from the car. Further, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. For their safety, police officers may handcuff individuals during an investigative detention.

An investigative detention may develop into a custodial detention. The key difference between an investigative and a custodial detention is that the latter involves such coercive conditions as to constitute the functional equivalent of an arrest. The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial.

The numerous factors used to determine whether a detention has evolved into an arrest include the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel the suspicions of the police. Moreover, we note custodial interrogation has been defined as questioning initiated by the police after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Further, an interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect.

**Commonwealth v. Spence**, 290 A.3d 301, 314-15 (Pa. Super. 2023)

(citations omitted and formatting altered).

In the instant case, the trial court explained:

The [trial court] finds that under the totality of the circumstances, [Appellant] was in an investigative detention at the time he made the statement that he had recently drank a fifth of vodka. . . . [T]he fact that [Appellant] was handcuffed was merely part and parcel of ensuring officer safety during a lawful **Terry**[3] stop (which [Corporal] Quinn was justified in conducting because he had observed unusual and dangerous conduct on the part of [Appellant], had identified himself as a police officer, had made

_____

[3] **Terry v. Ohio**, 392 U.S. 1 (1968).

> reasonable inquiries, and because [Appellant] had told him that he had a knife). Moreover, [Appellant] had refused to identify himself. . . . For all of these reasons, the [trial court] concludes that at the time [Appellant] made the statement, his detention was still investigative in nature, and that he was therefore not entitled to the protections of ***Miranda***. Accordingly, his statement is fully admissible.

Trial Ct. Op. & Order at 9 (parenthesis in original).

Based on our review of the record, we find no error in the trial court's legal conclusions. ***See Lear***, 290 A.3d at 715. As noted by the trial court, the police handcuffed Appellant for officer safety while the investigative detention was still ongoing. ***See Spence***, 290 A.3d at 314; ***see also Commonwealth v. Wright***, 224 A.3d 1104, 1109 (Pa. Super. 2019) (explaining that police officers may handcuff individuals during an investigative detention for officer safety). Moreover, Appellant's admission that he had consumed a fifth of vodka was the result of questions from the police designed to either confirm or dispel their suspicion of DUI. ***See Spence***, 290 A.3d at 314; ***see also Commonwealth v. Hampton***, 204 A.3d 452, 457 (Pa. Super. 2019) (stating that an investigative detention may continue "only so long as is necessary to confirm or dispel [an officer's] suspicion"). For these reasons, Appellant is not entitled to relief.

**Motion for Continuance**

In his second issue, Appellant argues that the trial court abused its discretion when it denied his motion for a continuance. Appellant's Brief at 19. Specifically, Appellant notes that he requested a continuance after a Uniontown Hospital employee failed to appear for court, despite having been

- 10 -

served with a valid subpoena. *Id.* Appellant alleges that "there is no dispute that Appellant's subpoena was valid and properly served and thus a continuance should have been granted so the subpoena could be properly enforced to protect Appellant's right to a fair trial." *Id.* Although Appellant acknowledges that a subpoena may be quashed at the discretion of the court, the trial court in this case "engaged in a far flung analysis to reach the conclusion that the subpoena was to be quashed." *Id.*

Initially, it is well settled that appellate briefs must conform to the requirements set forth in the appellate rules. *In re Ullman*, 995 A.2d 1207, 1211 (Pa. Super. 2010). If the defects in an appellant's brief "are substantial, the appeal or other matter may be quashed or dismissed." Pa.R.A.P. 2101.

The appellate rules set forth specific requirements for the required content of an appellate brief. *See* Pa.R.A.P. 2111(a). Specifically, Rule 2119(c) provides that "[i]f reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119(c).

Additionally, we note that it is an appellant's duty to present sufficiently developed arguments for our review, which include references to the record and citations to legal authority. *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (citing Pa.R.A.P. 2119). Failure to do so may result in waiver. *Id.*

Here, Appellant's entire argument consists of three sentences and centers on his claim that the trial court improperly quashed his subpoena for the Uniontown Hospital employee. *See* Appellant's Brief at 19. However, Appellant fails to direct this Court to any point in the record where the trial court allegedly quashed Appellant's subpoena. *See* Pa.R.A.P. 2119(c). Further, Appellant fails to cite any statute or case law that would support his position that the trial court improperly denied his motion for a continuance. *See Hardy*, 918 A.2d at 771. As this Court has repeatedly cautioned, we will not craft arguments for parties or otherwise act as counsel. *See e.g.*, *Commonwealth v. Tchirkow*, 160 A.3d 798, 804 (Pa. Super. 2017). Therefore, we conclude that Appellant has waived this issue for appellate review.

### Cross-Examination of Corporal Quinn

In his next issue, Appellant claims that the trial court abused its discretion when it "terminated and/or circumscribe[ed]" Appellant's cross-examination of Corporal Quinn because "the credibility of Corporal Quinn was at issue and the Commonwealth's case based primarily on his opinion [] that Appellant was under the influence of alcohol to such a degree as to render him incapable of safe driving." Appellant's Brief at 19-20 (some formatting altered). Appellant's remaining argument on this issue is as follows:

> A trial court is to balance the degree to which an accommodation for a witness will assist the witness in testifying in a truthful manner against any possible prejudice to the defendant's right to a fair trial. *Commonwealth v. Purnell*, 259 A.3d 947 (Pa. Super. 2021). Instantly, the accommodation for [Corporal] Quinn

- 12 -

by the trial court insofar as thwarting defense counsel's cross-examination in the name of the best evidence rule clearly did not assist him in testifying truthfully and instead allowed him to avoid impeachment for inconsistencies in his testimony when compared to the MVR video and audio transcript and the prejudice to Appellant's right to a fair trial was extreme and irreparable.

*Id.* at 20.

However, Appellant does not cite to any instances in the record in which the trial court improperly intervened during Appellant's cross-examination of Corporal Quinn, nor does Appellant explain in any detail how the trial court abused its discretion. As noted above, we will not develop arguments on an appellant's behalf, nor will we examine the record for any possible errors by the trial court as it relates to Corporal Quinn's cross-examination. **See** **Tchirkow**, 160 A.3d at 804; Pa.R.A.P. 2119. For these reasons, we find that Appellant has waived this issue for review.

## Sufficiency of the Evidence

Next, Appellant challenges the sufficiency of the evidence for his DUI conviction. Appellant's Brief at 20. Initially, Appellant does not contest that he was driving, operating, or otherwise in physical control of the movement of his vehicle. *Id.* at 20-25. Instead, Appellant claims that the Commonwealth failed to establish that he had imbibed enough alcohol to impair his ability to safely drive, operate, or be in physical control of his vehicle. *Id.* at 23-25. In support, Appellant argues that the Commonwealth based its theory of the case solely upon the appearance of "possible" vomit. *Id.* at 20. Appellant further alleges that the Commonwealth could have

verified that the substance observed in Appellant's vehicle actually was vomit, "despite having the opportunity to do so and to preserve any such alleged evidence." *Id.* Therefore, Appellant concludes that the Commonwealth's evidence was "insufficient to support each element of the charge of DUI . . . and the evidence was insufficient to support a guilty verdict beyond a reasonable doubt[.]" *Id.* at 25.

Our standard of review when presented with a sufficiency of the evidence claim is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Bragg*, 133 A.3d 328, 330-31 (Pa. Super. 2016) (citation omitted).

- 14 -

In order to sustain a conviction for DUI under Section 3802(a)(1) of the Motor Vehicle Code, the Commonwealth must prove that the defendant drove, operated, or was otherwise in physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol that rendered him incapable of safely driving, operating, or otherwise being in physical control of the movement of a vehicle. 75 Pa.C.S. § 3802(a)(1).

This Court has explained:

Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate, or to react prudently to changing circumstances and conditions. Further, we have held that a police officer who has perceived a defendant's appearance and conduct is competent to express an opinion, in a prosecution for DUI, as to the defendant's state of intoxication and ability to safely drive a vehicle.

*Commonwealth v. Banks*, 253 A.3d 768, 775 (Pa. Super. 2021) (citations omitted and formatting altered), *appeal denied*, 267 A.3d 1213 (Pa. 2021).

Here, at trial, Corporal Quinn testified that, in his opinion, Appellant had imbibed a sufficient amount of alcohol, such that it rendered him incapable of safely driving. N.T. Trial at 20. First, Corporal Quinn testified that Appellant was operating his vehicle at a high rate of speed. *Id.* at 12.[4] After initiating the traffic stop, Corporal Quinn noted that Appellant had bloodshot eyes, the odor of an alcoholic beverage emanating from his person, and that Appellant had something wet on his clothing. *Id.* at 16-17. When Corporal Quinn asked

---

[4] Specifically, Corporal Quinn testified that Appellant was driving 62 miles per hour in a 45 miles per hour zone. *Id.* at 14.

- 15 -

Appellant if he had anything to drink, Appellant responded by saying that he had consumed a fifth of vodka. *Id.* at 17. Corporal Quinn also observed Appellant to have slurred and "thick" speech. *Id.* Further, Corporal Quinn testified that he could observe vomit on the inside of Appellant's vehicle on driver's side and around the center console. *Id.* at 18. During Corporal Quinn's testimony, the Commonwealth introduced a copy of the MVR from Corporal Quinn's vehicle, which the trial court admitted into evidence. *Id.* at 21, 24.

Following our review of the record, and viewing the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence to warrant the conviction of DUI. *See Bragg*, 133 A.3d at 330-31; *see also Banks*, 253 A.3d at 775; 75 Pa.C.S. § 3802(a)(1). As noted previously, Corporal Quinn's testimony provided the trial court with sufficient circumstantial evidence that Appellant had imbibed a sufficient amount of alcohol such that it rendered him incapable of safely driving, operating, or being in physical control of a vehicle. Therefore, Appellant is not entitled to relief on this claim.

### Weight of the Evidence

In his final issue, Appellant contends that his conviction for DUI was against the weight of the evidence. Appellant's Brief at 25. Specifically, Appellant argues that the Commonwealth failed to introduce evidence that Appellant's behavior was "indicative of alcohol impairing his ability to drive

safely[.]" **Id.** Instead, Appellant states that his behavior was the result of Appellant's concern for his own safety due to his distrust of the police. **Id.**

Our standard of review for an appeal from the trial court's denial of a weight of the evidence claim is well settled.

> [O]ur standard of review for a weight-of-the-evidence claim is an abuse of discretion. As we have often reminded appellants, an appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

**Commonwealth v. Rogers**, 259 A.3d 539, 541 (Pa. Super. 2021) (citations omitted and formatting altered).

In the instant case, Appellant's argument for his weight of the evidence claim consists of little more than a restatement of Appellant's theory of the case. **See** Appellant's Brief at 25-28. At no point does Appellant articulate, or even argue, how the trial court abused its discretion when it denied Appellant's weight of the evidence motion. **See Rogers**, 259 A.3d at 541. Moreover, Appellant does not cite to any case law aside from a description of the elements of DUI. Appellant's Brief at 25 (citing **Commonwealth v. Palmer**, 751 A.2d 223, 228 (Pa. Super. 2000)).[5] Accordingly, we find that

---

[5] We note that **Palmer** is inapposite to any weight of the evidence analysis, as the **Palmer** Court was asked to review the sufficiency of the evidence and whether the trial court erred when it denied Appellant's motion to suppress. **Id.**, 751 A.2d at 225. As this Court has previously observed, weight and sufficiency of the evidence claims are distinct. **See Commonwealth v.**
*(Footnote Continued Next Page)*

Appellant has waived his weight-of-the-evidence claim on appeal. **See**

**Hardy**, 918 A.2d at 771.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2023

---

**Rivera**, 238 A.3d 482, 495 (Pa. Super. 2020). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted).