J-S30018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: O.M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 92 MDA 2024 |

Appeal from the Order Entered November 28, 2023
In the Court of Common Pleas of Berks County
Juvenile Division at No(s):  CP-06-JV-0000264-2022

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:          **FILED: NOVEMBER 13, 2024**

O.M.W. appeals from the dispositional order entered after the juvenile court adjudicated him delinquent for committing acts constituting aggravated indecent assault and indecent assault.[1]  We affirm.

The Commonwealth alleged O.M.W. had indecent contact with R.M. at a summer day camp in Robeson Township, Berks County ("the Robeson Township camp"), sometime between June and August 2018.  At that time, O.M.W. and R.M. were both eleven years old.

At the adjudication hearing, R.M. testified she met O.M.W. at camp, where they became "boyfriend and girlfriend."  N.T., 11/14/23, at 6-7.[2]  R.M.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3125(a)(1), (2), (7), (b); 3126(a)(1), (2), (7).

[2] R.M. identified O.M.W. in court.  **See** N.T., 11/14/23, at 5.

stated O.M.W. talked about "pornographic stuff," had her sit on his lap, and touched her leg. *Id*. at 7. She would feel uncomfortable and push him away. *See id*. at 10.

R.M. testified that in the last week of camp, she and O.M.W. were playing "capture the flag" with other campers and counselors. *Id*. at 11, 18. During the game, O.M.W. ran off into the woods, and she followed. *See id*. at 11-12. Once in the woods, R.M. stated O.M.W. "started to get really touchy and aggressive[,]" "tackled her to the ground," laid on top of her, and held her down. *Id*. at 12-13. O.M.W. then took off her pants and underwear and put his fingers inside her vagina. *See id*. at 14-15. R.M. testified she struggled, but she could not remember if she called out for help, although she recalled O.M.W. had put his hand over her mouth. *See id*. at 15-16. After the attack ended, O.M.W. told her to not say or do anything about the attack. *See id*. at 17. R.M. testified she did not see O.M.W. after camp ended, but they would talk on the phone or message each other, and, at one point, O.M.W. asked her to send him naked pictures of herself. *See id*. at 9, 30-31. R.M. did not disclose the attack until several years later, when she told a friend, then her mom, and then her therapist. *See id*. at 18-19. Robeson Township police and the Children's Alliance Center then interviewed R.M. *See id*. at 20.

During her testimony at the adjudication hearing, R.M. indicated she met O.M.W. at a camp in "Perkiomen" rather than Robeson Township. *Id*. 6-

7.[3] O.M.W.'s counsel also cross-examined R.M. with her prior statements that O.M.W. had "dragged" or "lured" her into the woods. *Id*. at 27. Additionally, when O.M.W.'s counsel pressed for details about the assault, R.M. testified she did not remember. *See id*. at 25-28 (indicating, *inter alia*, R.M. could not recall whether she got hurt when taken to the ground, how O.M.W. took off her pants, whether she was wearing shorts or long pants, which hand O.M.W. used to touch her vagina, how many fingers O.M.W. used, how long the assault took, or how the assault ended).

Officer Kevin Zeiber ("Officer Zeiber") also testified at the adjudication hearing. Officer Zeiber interviewed O.M.W. during his investigation, and O.M.W. stated he remembered R.M. *See id*. at 44. When Officer Zeiber asked O.M.W. if he remembered anything about "this incident[,]" O.M.W. replied "he did not remember [because i]t was a long time ago." *Id*. at 44.

O.M.W. called the current executive director of the Robeson Township camp and elicited her testimony that her camp did not play capture the flag. *See id*. at 53. Instead, the camp's "flagship game" was "predator and prey,"

---

[3] The Commonwealth presented evidence that O.M.W. and R.M. were at the Robeson Township camp in the summer of 2018. *See* N.T., 11/14/23, at 33-34. After R.M. referenced the camp in Perkiomen, the Commonwealth elicited her testimony she went to two different summer camps, and she knew O.M.W. from one of those camps. *See id*. at 6.

a variant of hide and seek in line with the camp's focus on educating children about nature. *Id*. at 53.[4] Games would last for less than a minute. *See id*.

The parties presented closing arguments, after which the juvenile court discussed its findings of fact. The court, in relevant part, found R.M. credible and found O.M.W.'s failure to deny the incident during the interview with Officer Zeiber particularly troubling. *See id*. at 67. The juvenile court stated it was satisfied beyond a reasonable doubt that the Commonwealth established its case, *see id*., and thereafter heard evidence concerning the disposition of O.M.W.

On November 28, 2023, the juvenile court entered the order of adjudication and disposition placing O.M.W. on probation.[5] In January 2024, O.M.W. filed a motion for leave to file an appeal *nunc pro tunc*, which the juvenile court granted. O.M.W. thereafter filed a timely notice of appeal, but

---

[4] The executive director testified she did not work at the camp when the assault occurred in the summer of 2018. *See* N.T., 11/14/23, at 6-7, 51.

[5] The order was dated November 14, 2023, but was not docketed until November 28, 2023. The juvenile court subsequently issued clarification orders concerning the offenses on which it adjudicated O.M.W. delinquent, stating it found O.M.W. "was involved" in all the listed offenses, but indicating only the lead offense of aggravated indecent assault under 18 Pa.C.S.A. § 3125(b) would count for the purpose of a prior record score. *See* Order 12/4/23, at 1; N.T. 11/27/23, at 1.

filed an untimely Rule 1925(b) statement. The juvenile court filed an opinion responding to the issue raised in O.M.W.'s Rule 1925(b) statement.[6]

O.M.W. raises the following issue for our review:

> Was the evidence presented by the Commonwealth sufficient to prove beyond a reasonable doubt that [O.M.W.] committed the act of aggravated indecent assault?

O.M.W.'s Brief at 4.

O.M.W. purports to challenge the sufficiency of the evidence. A challenge to the sufficiency of the evidence presents a pure question of law. *See In re D.S.*, 39 A.3d 968, 973 (Pa. 2012). This Court's standard of review is *de novo*, and our scope of review is plenary. *See Interest of E.L.W.*, 273 A.3d 1202, 1205 (Pa. Super. 2022). Furthermore, it is well settled that:

> [w]hen a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the

---

[6] Because the untimely filing of a Rule 1925(b) statement constitutes the ineffective assistance of counsel *per se*, we will not find waiver under Pa.R.A.P. 1925(b)(4)(vii). *See Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*). Moreover, because the juvenile court addressed the merits of the issue raised in this appeal, we need not remand for a supplemental opinion. *See id*.

We note the juvenile court's opinion indicated O.M.W. filed a post-dispositional motion, which it denied. *See* Juvenile Ct. Op., 3/20/24, at 3. Although neither the docket nor the record contain any indication O.M.W. filed a written post-dispositional motion, the juvenile court addressed in considerable detail a weight-of-the-evidence claim based on several specific challenges to its credibility determinations at the adjudicatory hearing. *See id*. at 3-7.

entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a [juvenile's] innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*Id*. (internal citation omitted).

O.M.W. does not claim the Commonwealth failed to prove any specific element of the acts for which he was adjudicated delinquent. Rather, he assails R.M.'s credibility because she was inconsistent about where, when, and how the assault occurred and could not recall details about the assault. *See* O.M.W.'s Brief at 12. He also attacks the juvenile court's stated reasons for finding R.M. credible. *See id*. Specifically, he contends the juvenile court erred in considering "capture the flag" and "predator and prey" to be similar games, failing to consider R.M.'s failure to report the abuse promptly, and placing disproportionate weight on O.M.W.'s failure to deny the attack when talking to Officer Zeiber. *See id*. at 12, 13-17. He asserts the juvenile court either impermissibly shifted or lowered the burden of proof and thereby failed to hold the Commonwealth to the proper beyond-a-reasonable-doubt standard. *See id*. at 17-18.

At the outset, we note that we could find O.M.W.'s only issue in this appeal waived and/or meritless because his arguments go to the weight, not the sufficiency, of the evidence. **See Interest of G.E.W.**, 233 A.3d 893, 902 (Pa. Super. 2020) ("A challenge to the credibility or reliability of the Commonwealth's witnesses goes to the weight, not the sufficiency, of the evidence") (citation omitted).[7] Indeed, it appears O.M.W. attempts to recast his weight-of-the-evidence arguments, which the juvenile court previously addressed, into a sufficiency claim. **Compare** Juvenile Ct. Op., 3/20/24, at 3-7 (outlining and addressing O.M.W.'s weight-of-the-evidence arguments) **with** O.M.W.'s Brief at 13-17 (repeating similar arguments as a challenge to sufficiency of the evidence). In so doing, O.M.W. disregards the appropriate standard of reviewing the sufficiency of the evidence, namely, that this Court review the entire record and view the evidence in the light most favorable to the Commonwealth. **See E.L.W.**, 273 A.3d at 1205; **G.E.W.**, 233 A.3d at 902; **accord Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000).[8]

_____

[7] O.M.W.'s counsel also failed to ensure that the record contained a transcript of the adjudication hearing. However, upon an informal request, the trial court provided this Court with a copy of the transcript of the adjudication hearing.

[8] We note O.M.W. has waived appellate review of a weight-of-the-evidence claim because his statement of question involved raised only a sufficiency-of-the-evidence claim, and he only requests a reversal of the adjudication of delinquency, not a new hearing. **See** O.M.W.'s Brief at 4, 18; **see also** Pa.R.A.P. 2116(a) ("[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); **Interest of**
*(Footnote Continued Next Page)*

Nevertheless, the juvenile court also considered, and rejected, O.M.W.'s claim that the evidence was insufficient to support the adjudication of delinquency. The juvenile court explained R.M. testified credibly that

> when she followed [O.M.W.] into the woods while they were playing a game at camp, [O.M.W.] tackled her to the ground and got on top of her, held her down[,] and put his hand over her mouth. He then removed [her] pants and underpants and placed his fingers in her vagina. As the assault occurred, [R.M.] struggled to get away. After the incident, [O.M.W.] told [R.M.] not to say anything or do anything about what happened, and [R.M.] told no one about the assault at this time because she was afraid. . . . [R.M.] was eleven years old at the time of the offense.

*See* Juvenile Ct. Op., 3/20/24, at 8-9. The juvenile court recognized the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to adjudicate a juvenile delinquent. *See id*. at 9 (discussing *Interest of D.J.B.*, 230 A.3d 379, 387 (Pa. Super. 2020)). The juvenile court thus concluded R.M.s testimony established the acts beyond a reasonable doubt. *See id*. at 9.

Following our review, we conclude there was sufficient evidence to sustain the adjudication of delinquency for the reasons stated by the juvenile court. Reduced to its essence, and when viewed in a light most favorable to the Commonwealth, R.M.'s testimony was clear: O.M.W. digitally penetrated her vagina, by forcible coercion, without her consent, and when she was under

---

*D.J.K.*, 303 A.3d 499, 506 (Pa. Super. 2023) (noting the relief for a successful weight-of-the-evidence claim is the award of a new hearing), *appeal denied*, 315 A.3d 834 (Pa. 2024).

thirteen years of age. **See** N.T., 11/14/23, at 5, 12-16. This testimony alone was sufficient to sustain the delinquency adjudication. **See D.J.B.**, 230 A.3d at 387. Thus, O.M.W.'s challenge to the sufficiency of the evidence merits no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2024